572 A.2d 169

Carl Lee JONES

v.

STATE of Maryland.

No. 25, Sept. Term, 1988.

Court of Appeals of Maryland.

April 17, 1990.

William H. Murphy, Jr. (Alan H. Murrell, Public Defender, Sherrie B. Glasser, Asst. Public Defender, both on brief), Baltimore, for petitioner.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL,* JJ.

COLE, Judge.

Petitioner, Carl Lee Jones, was convicted in a non-jury trial in the Circuit Court for Baltimore City of possession of cocaine with intent to distribute, possession of marijuana, and the unlawful wearing, carrying or transporting of a handgun. He was sentenced to a total term of nine years imprisonment on all counts. Prior to trial, Jones moved to suppress evidence on the ground that the evidence was illegally seized by police after he was illegally stopped. The court denied his motion, and Jones was found guilty on each count as indicated. The Court of Special Appeals affirmed his conviction and we granted his Petition for Certiorari. We are asked, under the circumstances of this case, to decide whether a police stop of a bicyclist for investigatory

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

purposes constitutes a legal seizure under the Fourth Amendment.

The facts are uncomplicated. On September 17, 1986 at approximately 3:20 a.m., police officer Anthony Brown was driving northbound on Potomac Avenue in Baltimore City when he noticed Jones riding toward him on a ten speed bicycle. Jones was carrying across his shoulders clothes that appeared to be on hangers draped with plastic. Officer Brown further noticed a white grocery-type plastic bag hanging from the bicycle's handlebars. At trial, the officer testified that his attention was drawn to Jones at the time because of recent burglaries in the area and because Jones was travelling from the direction of a dry cleaning establishment located six blocks away. However, the officer indicated that he had not received calls for burglaries that night. As Jones approached, Officer Brown exited his vehicle and asked Jones to stop. Brown could not recall exactly what he said to Jones, but indicated that he said something to the effect of "Hey, could you come here" or "Hold on a minute." As Jones stepped off the bicycle the officer testified that he noticed a bulge in his jacket pocket that appeared to be a handgun. Officer Brown patted Jones down and retrieved a .25 caliber pistol. Jones was placed under arrest. A search of the grocery bag revealed 14 capsules containing cocaine, a quantity of marijuana, one pack of rolling paper, and a billfold containing five smaller vials of cocaine.

Jones testified that he was enroute from his mother's house, located just 20 feet away from where Officer Brown stopped him, to his girlfriend's house to attend a party. According to Jones, the clothes he was carrying were personal items he intended to change into once he arrived at the party. He stated that Officer Brown stopped his vehicle, pulled out his gun, and ordered him to get up against the patrol car.

The trial judge found Officer Brown's testimony more credible and that Jones's account of the incident was vague in ruling that Jones's Fourth Amendment rights were not

violated. Jones appealed his conviction challenging the legality of his initial stop by police.

On appeal, the Court of Special Appeals affirmed Jones's conviction in an unreported opinion. The intermediate appellate court concluded that the initial encounter between Officer Brown and Jones did not rise to the level of a Fourth Amendment seizure. The court characterized the initial encounter as a "mere accosting" not within the protection of the Fourth Amendment. The court reasoned that Jones was free to disregard Officer Brown's salutation and continue on his way. The court concluded that because there were no signs of force or weapons used to effectuate the stop and because Jones stopped voluntarily in a cooperative and polite manner, no seizure of Jones had occurred. Therefore, the intermediate appellate court held that the motion to suppress the seizure of the cocaine, marijuana, and handgun was properly denied by the trial court. For reasons set forth below, we hold that Jones was subject to an illegal seizure by police in violation of his Fourth Amendment rights.

Throughout this appeal, Jones contends that the officer seized him by effectuating the stop of his bicycle. He asserts that the stop, without a reasonable articulable suspicion, was illegal. The State urges, however, that under the standard set forth by the Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the stop of Jones was more consensual than custodial, and therefore was not a seizure. Alternatively, the State argues that the officer had sufficient articulable suspicion to justify his conduct. We disagree.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court declared that when a police officer stops an individual thereby restraining his freedom to walk away, for Fourth Amendment purposes, the officer has seized that person. *Id.* at 16, 88 S.Ct. at 1876, 20 L.Ed.2d at 903. *Accord, Anderson v. State,* 282 Md. 701, 704, 387 A.2d 281, 283 (1978). The Supreme Court pointed out that while not every street encounter between police

and citizens involves a seizure, when the police by some means of physical force or show of authority detain an individual, thereby restraining the person's liberty, a seizure has occurred. *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905.

In 1980, the Supreme Court in *Mendenhall* described the extent of the restraint on a person's freedom of movement which distinguishes the seizure of a person from a mere accosting. No seizure occurs when an individual to whom questions are put remains free to disregard the questions and walk away. 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509. Under these circumstances, Justice Stewart, writing for the Court, explained that a person has not been seized if there is no restraint on the person's freedom of movement. The person may disregard the questions put forth by the police officer and continue on his way.

In defining the contours of what constitutes a Fourth Amendment seizure, the Court adopted a totality of the circumstances approach.

> [A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the (1) threatening presence of several officers, (2) the display of a weapon by an officer, (3) some physical touching of the person of the citizen, or (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* The presence of all or one of these four factors may persuade a trial court that a seizure has occurred, provided the person stopped does not feel free to continue on his or her way. The significant point of *Mendenhall* focuses upon what an individual reasonably believes as a result of police conduct towards him.

Three years later the Supreme Court decided *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). There the Court examined whether a consensual inquiry by police for investigatory purposes was an intrusion on one's personal liberty. Consistent with the Court's ruling in *Mendenhall*, Justice White explained the nature of a voluntary stop:

> Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in criminal prosecution his voluntary answer to such questions. Nor would the fact that the officer identified himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, need not answer any questions put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable objective grounds for doing so, and his refusal to listen or answer does not, without more, furnish those grounds.

*Royer*, 460 U.S. at 497–98, 103 S.Ct. at 1324, 75 L.Ed.2d at 236 (citations omitted). *See also INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 254 (1984).

The Supreme Court revisited *Mendenhall* in *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). In *Chesternut*, the Court applied the *Mendenhall* test in an investigatory pursuit context. The defendant, after observing a police car on patrol, began to run. The police in the patrol car followed the defendant to see where he was running. As the patrol car drove alongside the defendant, police observed him discard from his pockets a number of packets later found to contain pills and heroin. The Court held that the defendant was not "seized" because a police "chase," standing alone, was insufficient to constitute a seizure. The Court explained that the presence of

the police car catching up with the defendant would not have communicated to a reasonable person an attempt to capture him or otherwise restrict his freedom of movement. 486 U.S. at 575, 108 S.Ct. at 1980–81, 100 L.Ed.2d at 573. The Court did not establish a bright-line rule to be applied in a police chase context, but indicated, however, that the standard set forth in *Mendenhall* was flexible enough to be applied to an entire range of police conduct. *Id.* at 574, 108 S.Ct. at 1979–80, 100 L.Ed.2d at 572. Thus, the Court in *Chesternut* took notice of several additional factors as evidence that a seizure has occurred: police (1) activating a siren or flashers; (2) commanding a person to "halt," or display of a weapon; and (3) operating a car in an aggressive manner to block the defendant's path or otherwise control the direction or speed of his movement. *Id.* at 575, 108 S.Ct. at 1980, 100 L.Ed.2d at 573. *See Brower v. County of Inyo*, 489 U.S. ——, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (use of a road block to stop a person constitutes a seizure); *United States v. Sokolow*, 490 U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (defendant seized when agents grabbed his arm and moved him back into the sidewall).

■ Applying the *Chesternut* analysis to these facts, we conclude that Jones was seized at the moment the officer commanded him to stop. The officer's conduct was tantamount to a formal demand compelling the individual to comply and a reasonable person would not have felt free to ignore the officer's command to stop. The officer was dressed in uniform and driving a marked patrol car. As Jones approached, the officer pulled his car to the side of the road, exited the vehicle, and stood in the street when he called out to Jones using one of three salutations—"Hey, could you come here" or "Hold on a minute" or "Hey, wait a minute." It seems reasonable for Jones to feel constrained to stop. He was operating a bicycle on a public highway and it would be an offense under the Maryland Vehicle Law for him willfully to disobey any lawful order or direction of any police officer. Md.Code (1977, 1987 Repl.

Vol.), §§ 21–103(a) of the Transportation Article. *See* § 21–1202, *id.*

We find these factors persuasive to conclude that the officer's conduct reasonably indicated to Jones that he was not free to ignore the officer's presence and continue on his way. Given these circumstances, the average citizen, not being able to distinguish a mere accosting from a seizure, would have viewed the actions of the police officer intimidating enough to have complied. This was not a situation where the officer merely approached Jones on the street to ask him if he was willing to answer some questions. The officer used language indicating that he wanted Jones to stop in compliance with his request. The trial court's attention was narrowly drawn to the fact that no force or weapon was used by the officer in stopping Jones. We discussed the question of how much actual physical control of the person by police is necessary to suggest that a seizure has occurred in *State v. Lemmon,* 318 Md. 365, 568 A.2d 48 (1990).

In *Lemmon,* three police officers in response to an anonymous tip that a black male in the area was selling narcotics observed defendant and another black male standing together in a playground. As two of the officers approached them, the defendant looked in their direction and started to walk away. One of the officers identified himself as a police officer and commanded the defendant to "come here," at which point the defendant began to run. As he fled, police gave chase attempting to cut him off with the police car. Lemmon avoided the blockade by running around the vehicle. Police observed Lemmon reach into his jacket pocket and remove a "medicine type vial" which he tried to discard through a chain link fence. Police later found the vial which contained diazapam, commonly known as Valium. Lemmon was arrested and charged accordingly. We held that in light of *Chesternut,* the defendant was seized by the police when the two officers approached him and commanded the defendant to "come here." We found that the immediate pursuit by the officers when Lemmon

ran, and the attempt to set up a blockade with the police car, were all desperate measures in our view to communicate to a reasonable person an attempt to capture or otherwise intrude upon Lemmon's freedom of movement. 318 Md. at 374, 568 A.2d at 53.

The State argues that it was reasonable to infer from the totality of circumstances surrounding this incident that Jones was free to leave. We disagree. As we have said, an individual may be restrained in a police dominated atmosphere by physical force or a show of authority. Other States seem to agree. *See State v. Davis*, 104 N.J. 490, 517 A.2d 859 (1986) (the police officer testified that two suspects riding bicycles were not free to leave because an investigation was being conducted); *State v. Frederick*, 34 Wash. App. 537, 663 P.2d 122 (1983) (officer confronted defendant at a bus stop, saying: "Stop, I want to talk to you," and defendant then fled, and court concluded that "[a] reasonable person would not flee a police officer's order to stop, so [officer's] statement resulted in a seizure for purposes of the Fourth Amendment"); *Revels v. State*, 666 P.2d 1298 (Okla.Cr.1983) (seizure occurred not when police officer pulled alongside pedestrian and yelled "Hey," but when officer exited patrol car and said "Stop, police."). We hold, therefore, that a Fourth Amendment seizure occurred when the police officer stopped Jones.

■ Having determined that the officer "seized" Jones, we must next determine whether the stop was reasonable. In *Anderson*, quoting *Terry*, we said that police officers are entitled to make a forcible stop if the officer has reasonable grounds for doing so. He must be able to point to specific and articulable facts that warrant such an intrusion to be within the legal parameters of the Fourth Amendment. 282 Md. at 704, 387 A.2d at 283.

■ It is clear to us from an examination of the record that Officer Brown lacked a reasonable suspicion to justify the stop of Jones. Officer Brown testified that the area where Jones was riding his bicycle had been the scene of

recent burglaries, and that Jones was carrying clothing covered with plastic within six blocks of a dry cleaning establishment. Brown admitted he had no knowledge of any specific crimes having been committed during the early morning hours nor of any burglaries having occurred in the area that night. Therefore, as we see it, his stop of Jones was based on a "hunch" that Jones may be carrying clothing from the dry cleaners located nearby. Mere hunches are insufficient to justify the stop of a citizen riding a bicycle on a public street. There was no indication that Jones was carrying more than one garment or making an escape by way of a bicycle. In fact, Jones testified that the clothes he was carrying were personal items to be changed into at a later time and that he was leaving his mother's house which was located approximately 20 feet away.

In *Anderson,* we cautioned against police conduct short of the requirements of *Terry.* We said that tenuous facts constituting a " 'reasonable suspicion' would be perilously close to entitling a policeman 'to seize and search every person whom he sees on the street.' " 282 Md. at 707, 387 A.2d at 285 (quoting *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)).

Therefore, we conclude that the police officer's conduct here did not amount to a legitimate *Terry* stop, and was an unconstitutional seizure. Accordingly, we reverse the judgment of the Court of Special Appeals.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.