707 A.2d 947

**Jerry Wayne LAWSON**

v.

**STATE of Maryland.**

**No. 1143, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

April 3, 1998.

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Scott L. Rolle, State's Atty. for Frederick County, Frederick, on the brief), for appellee.

Submitted before DAVIS and SONNER, JJ., and JAMES S. GETTY, Judge (retired), Specially Assigned.

SONNER, Judge.

This is an appeal from a conviction in the Circuit Court for Frederick County for driving while under the influence of alcohol. The appellant, Jerry Wayne Lawson, maintains that the trial court erred when it did not suppress evidence that the State obtained through an illegal stop. Before trial, Lawson filed a motion to suppress the evidence, which the trial judge denied after a hearing. He then pleaded not guilty and submitted his case on an agreed statement of facts. The court found him guilty.

## FACTS

At the suppression hearing, appellant disputed some of the testimony of the arresting officer, Corporal, then Officer, G.S. Gautney from the Frederick Police Department. According to Corporal Gautney, he was patrolling in the area of John Hanson Apartments at about 7:45 p.m. on June 22, 1994, when he drove past appellant, who was sitting in a legally parked vehicle in an area known for its high drug activity. Corporal Gautney noticed appellant's vehicle because it displayed West Virginia tags. Corporal Gautney decided to circle around the complex and return to the location of the parked car and, then,

if it were still there when he returned, he would ask the driver "what business [he] had being in John Hanson." After circling around the complex, he saw that the vehicle had not moved, so he drove in behind it. As he was doing so, he noticed that the car began to back up, so he turned on his emergency lights to "cause the vehicle to stop." Once the car stopped, he approached appellant and asked him why he was in John Hanson. Appellant replied that his vehicle had overheated, so Corporal Gautney suggested that appellant start his car and, when he did so, the heat gauge did not show that the car was overheated. Corporal Gautney said that this contact with appellant revealed the odor of alcohol, so he ordered appellant out of the car and instructed him to perform field sobriety tests. The test results caused Gautney to conclude that appellant was under the influence of alcohol and led to the charge, suppression hearing, and trial, which form the basis of this appeal.

When appellant testified on his own behalf at the suppression hearing, he disputed Corporal Gautney's testimony. He maintained that, as Corporal Gautney's cruiser approached him from the rear, he shifted his vehicle from park to drive, and then saw the emergency lights of the police vehicle in his rearview mirror and stopped his car. Appellant maintained that, after approaching the car, the officer said that he had stopped appellant because he was in a high crime and drug area and that he then asked appellant for his license and registration, as well as whether he had any drugs or weapons. When Corporal Gautney asked whether he could search the car, appellant testified that he told the officer he could search the car if he had a search warrant. It was then that the officer asked him to step out of the car. Appellant introduced a copy of the statement of charges prepared by the officer immediately after the arrest, which recorded that Corporal Gautney decided to speak with appellant simply because he was alone, in an area heavy in drug traffic, and in a vehicle with out-of-state tags.

**614**

## DISCUSSION

In reviewing the denial of a motion to suppress, we review the evidence in the light most favorable to the prevailing party. *McMillian v. State,* 325 Md. 272, 281, 600 A.2d 430 (1992) (citations omitted); *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990). We also accept the court's findings of the disputed facts unless clearly erroneous, by giving due regard to that court's opportunity to assess the credibility of witnesses, and then we make our own constitutional appraisal as to the effect of those facts. *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996); *McMillian,* 325 Md. at 281–82, 600 A.2d 430; *Riddick,* 319 Md. at 183, 571 A.2d 1239.

▆▆▆ Ordinarily, approaching a parked vehicle to question occupants about their identity and actions is a mere accosting and not a seizure. *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983); *Evans v. State,* 113 Md.App. 347, 360, 688 A.2d 28 (1997) (citing *McChan v. State,* 238 Md. 149, 157, 207 A.2d 632 (1965)). A seizure also does not occur when law enforcement officers attempt to stop a suspect who fails to comply to either a show of authority or application of physical force. *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991); *Brummell v. State,* 112 Md.App. 426, 685 A.2d 835 (1996). But, it is more than a mere accosting when the police attempt to detain a suspect for questioning through the use of police power and the suspect submits. *Id.,* 499 U.S. at 626, 111 S.Ct. at 1551. The approach then becomes a seizure and must be justified by a reasonable articulable suspicion that criminal activity is afoot. *Derricott v. State,* 327 Md. 582, 587, 611 A.2d 592 (1992) (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). In this case, Corporal Gautney did more than just approach appellant's vehicle; he activated his flashers to stop appellant from backing up any farther and appellant submitted.

▆▆▆ At the suppression hearing, the court found that, once Corporal Gautney turned on his emergency lights, he had

"sufficient articulable suspicion for then ... to go up and speak to Mr. Lawson." The question for us to decide is not whether Corporal Gautney had sufficient cause to approach a West Virginia automobile in an area known for its high crime rate or drug dealing activity. Rather, we must decide, under the circumstances of this case, whether Corporal Gautney's activation of his emergency lights, in conjunction with appellant's compliance, constituted a seizure and, if so, whether the officer had sufficient cause to detain appellant. The State's position is that the officer did not seize appellant when he activated his emergency lights but, even if he did seize appellant, he had sufficient articulable suspicion to have done so.

■ In *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)(opinion of Stewart, J.), the Supreme Court set out a test to determine whether a person has been seized, thereby triggering a Fourth Amendment analysis of the police action. A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.*

In reviewing the test set out in *Mendenhall,* Justice Scalia, in a 7–2 opinion, clarified that *Mendenhall,*

states a necessary, but not a sufficient, condition for seizure—or more precisely, for seizure effected through a "show of authority." *Mendenhall* establishes that the test for existence of a "show of authority" is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.

*Hodari D.,* 499 U.S. at 628, 111 S.Ct. at 1551. Justice Scalia points out that, in *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), the Supreme Court held that a "chase," standing alone, did not bring the Fourth Amendment protections into play, and that the conduct of the two officers in the police cruiser, following a suspicious pedestrian, did not communicate to a reasonable person that they

were attempting to intrude upon the suspect's freedom of movement. In so holding, the Court went on to observe that

[t]he record does not reflect that the police activated a siren or **flashers;** or that they commanded respondent to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block respondent's course **or otherwise control the direction or speed of his movements.**

*Id.,* 486 U.S. at 575, 108 S.Ct. at 1980 (emphasis ours). Therefore, the Supreme Court did not address "whether, if the *Mendenhall* test was met—if the message that the defendant was not free to leave had been conveyed—a Fourth Amendment seizure would have occurred." *Id.,* 499 U.S. at 628, 111 S.Ct. at 1552.

In attempting to answer this question in *Hodari D.,* the Supreme Court considered *Brower v. Inyo County,* 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989), in which the Supreme Court held that no seizure, in violation of the Fourth Amendment, occurred when police cars with flashing lights pursued the decedent for twenty miles but he did not stop until fatally crashing into a police-erected blockade. The Supreme Court based its holding on the fact that the show of authority—chasing the decedent in police cars with flashing lights—by the police did not induce a stop. Applying the same reasoning to *Hodari D.,* the Supreme Court held that "assuming that [the officer's] pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled." *Hodari D.,* 499 U.S. at 629, 111 S.Ct. at 1552.

*Hodari* and *Chesternut* explain that in order for a person to be seized through a "show of authority," within the meaning of the Fourth Amendment, two conditions must be satisfied. First, the law enforcement officers must convey that the suspect is not free to leave and, second, the suspect must submit to the assertion of authority. In this case, we find that the officer's conduct, the activation of the emergency lights, was a show of authority that constituted a seizure within the

contemplation of the Fourth Amendment because it communicated to a reasonable person that there was an intent to intrude upon appellant's freedom of movement. Few, if any, reasonable citizens, while parked, would simply drive away and assume that the police, in turning on the emergency flashers, would be communicating something other than for them to remain. In fact, the Maryland Code makes it unlawful for a driver to fail to stop when a uniformed officer signals the driver by using emergency lights. Md.Code (1977, 1992 Repl.Vol., 1997 Supp.), § 21–904(b) and § 27–101(h)(1) of the Trans. Art. *See State v. Walp,* 65 Or.App. 781, 672 P.2d 374 (1983)(seizure occurred at point where officer activated emergency lights, even though suspect had already stopped car of own accord); *State v. Stroud,* 30 Wash.App. 392, 634 P.2d 316 (1981) (seizure occurred where officers summoned occupants of parked car with both emergency lights and high beam headlights); *State v. Indvik,* 382 N.W.2d 623 (N.D.1986)(stressing use of flashing red lights as sign of seizure); *State v. Langseth,* 492 N.W.2d 298 (N.D.1992) (pursuit of vehicle with flashing lights converted encounter into a stop).

Since we find that the first prong has been satisfied, we look to *Hodari D.* for guidance in completing this analysis. In *Hodari D.,* the respondent's contention, that he had been seized when police began to pursue him, was rejected because respondent did not yield to the show of authority. The Supreme Court stated that a seizure "does not remotely apply, [ ] to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee," because there is neither "physical force to restrain movement" or "submission to the assertion of authority." *Hodari D.,* 499 U.S. at 626, 111 S.Ct. at 1550–51.

Applying the sound reasoning of the Supreme Court to this case, we find that appellant was seized within the contemplation of the Fourth Amendment. The appellant in this case, upon seeing the flashing emergency lights of the officer's patrol car, complied with the officer's "show of authority"

enjoining him to stop. Appellant did not flee; instead, he complied with the assertion of authority.

■ Since we find that Corporal Gautney seized appellant, we must now determine whether the stop was reasonable. *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991) (Fourth Amendment only proscribes unreasonable searches and seizures). An officer can make a forcible stop "if the officer has reasonable grounds for doing so. He must be able to point to specific and articulable facts that warrant such an intrusion to be within the legal parameters of the Fourth Amendment." *Jones v. State*, 319 Md. 279, 287, 572 A.2d 169 (1990) (citing *Anderson v. State*, 282 Md. 701, 704, 387 A.2d 281 (1978)).

■ As the Supreme Court has made clear, the level of suspicion required for a stop is considerably less than the proof needed for probable cause. *Quince v. State*, 319 Md. 430, 433, 572 A.2d 1086 (1990) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)).

But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officer[ ] must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Weedon v. State*, 82 Md.App. 692, 698–99, 573 A.2d 92 (1990).

■ The court below, in making its ruling, found that Corporal Gautney had "sufficient articulable suspicion for then . . . to go up and speak to Mr. Lawson." The facts of this case do not bear out this conclusion. Our analysis begins and ends at the point of constitutional seizure. The discovery of facts, subsequent to the stop, cannot overcome a stop that started out without enough to justify a detention. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) (in order to justify intrusion, court must look at facts available to

officer at the moment of the seizure to determine if seizure is reasonable under totality of circumstances.) Here, we find that, at the time of the stop and the activation of the emergency lights, Corporal Gautney could not have formulated a reasonable and particularized suspicion that appellant was engaging in criminal activity.

 The police may not randomly pull over and restrain citizens simply because they happen to be in an area noted for either frequent drug activity or a high level of crime. Certainly, the police may have more reason to be suspicious of those out and about in those areas, but a citizen's mere presence within a targeted neighborhood does not diminish the constitutional protections of those residing there or traveling through. It may be commendable police activity to be suspicious of cars with out-of-state license tags that are parked in a zone targeted by the police to be on the lookout for drug transactions, but that suspicion does not give law enforcement officers permission, under the constitutional provisions that restrain police authority, to detain and to seize the drivers of those automobiles and then to gather evidence from those about whom they are suspicious. The Constitution applies with equal force where crime is high and drug transactions open and notorious as where crime is low and drug activity apparently nonexistent. *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)(being in neighborhood frequented by drug users, alone, not enough to conclude that appellant engaged in criminal conduct). *See also United States v. Perrin,* 45 F.3d 869, 873 (4th Cir.1995) (treating dangerousness of neighborhood as independent corroborating factor holds suspects accountable for factors outside their control); *People v. Aldridge,* 35 Cal.3d 473, 198 Cal.Rptr. 538, 540, 674 P.2d 240, 242 (1984) ("A history of past criminal activity in a locality does not justify suspension of the constitutional rights of everyone, or anyone, who may subsequently be in that locality."); *Goldsmith v. State,* 405 A.2d 109 (Del.1979) (frequenting area known as an area of criminal activity for drugs and alcohol, alone, not sufficient to conclude that defendant was under the influence); *State v. Larson,* 93 Wash.2d

638, 611 P.2d 771 (1980) ("[M]any members of our society live, work and spend their waking hours in high crime areas, a description that can be applied to parts of many of our cities," and that alone "does not automatically make those individuals proper subjects for criminal investigation."); *Stroud,* 634 P.2d 316 (parking in high crime area not sufficient grounds for stop).

■ Here, the simple backing up of an automobile, not in violation of any law, but perceived by Corporal Gautney as possibly performed without knowledge of his newly arrived position in the appellant's way, did not establish justification for a stop.[1] Nor did the character of the neighborhood, that is "high crime" or one in which there had been a great deal of drug activity, remove it from the protections of the Constitution and the Bill of Rights.

As a consequence, when Corporal Gautney turned on the emergency lights, for whatever reason, and detained appellant against his will, in terms of the Fourth Amendment, the officer seized appellant without a particularized and objective basis for suspecting appellant of criminal activity. Allowing a seizure on these facts would "be perilously close to entitling a policeman 'to seize and search every person whom he sees on the street.'" *Anderson,* 282 Md. at 707, 387 A.2d 281, quoting *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). In this case, the result was an illegal seizure; any fruits of that seizure should have been suppressed. It was error for the court below not to have done so.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS**

---

1. Corporal Gautney's purpose, as he testified, may, indeed, have been only to prevent appellant from continuing to back up, but the effect was the same as saying to appellant that he was not free to leave. The officer's intent is irrelevant to our assessment of Fourth Amendment implications of seizures. *See Mendenhall,* 446 U.S. at 554, n. 6, 100 S.Ct. at 1877, n. 6, and 3 W. LaFave, *Search and Seizure,* § 9.2(h), p. 407 (2d ed.1987 and Supp.1995).

OPINION. COSTS TO BE PAID BY FREDERICK COUN-
TY.