*Dwayne Scriber v. State of Maryland,* No. 35, September Term 2013

**CRIMINAL LAW — DOUBLE JEOPARDY — "SAME ELEMENTS" TEST —** Under the "same elements" test set out in *Blockburger v. United States*, 284 U.S. 299 (1932), disobeying a lawful order is not the "same offense" as fleeing and eluding police for double jeopardy purposes. Assuming a *de novo* appeal in Circuit Court represents a successive prosecution for double jeopardy purposes, a defendant acquitted in the District Court of disobeying a lawful order may face charges of fleeing and eluding police in the Circuit Court *de novo* trial.

**CRIMINAL LAW — DOUBLE JEOPARDY — COLLATERAL ESTOPPEL —** A defendant may not invoke the doctrine of collateral estoppel where there has been no determination of an issue of ultimate fact. In considering whether a police officer's activation of emergency lights constitutes a lawful order or direction, the District Court was not engaged in making factual findings relevant to disposition of the charges of fleeing and eluding police.

Circuit Court for Charles County
Case No. 08-K-12-000806
Argued:  December 10, 2013

IN THE COURT OF APPEALS
OF MARYLAND

No. 35

September Term, 2013

_____

DWAYNE SCRIBER

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: March 5, 2014

This case calls upon us, once again, to consider the prohibitions against double jeopardy granted by the federal Constitution and Maryland's common law. We encounter here, in particular, two protections afforded by double jeopardy law: the plea of *autrefois acquit*, which protects against the second prosecution of a defendant for the same offense after acquittal; and the doctrine of collateral estoppel, which protects against the relitigation of an issue of ultimate fact that has been decided in a defendant's favor.

Petitioner Dwayne Scriber was charged with various traffic offenses in the District Court of Maryland, sitting in Charles County. At the conclusion of the State's case, the District Court granted Petitioner's motion for judgment of acquittal as to the charge of disobeying a lawful order or direction of a police officer[1] but ultimately convicted Petitioner of four counts of fleeing and eluding police,[2] in addition to other offenses. Petitioner filed notice of a *de novo* appeal to the Circuit Court for Charles County and, prior to trial, moved to dismiss the fleeing and eluding counts. He argued that, in light of his acquittal of disobeying a lawful order, prosecution of the fleeing and eluding charges in the Circuit Court would violate federal constitutional and Maryland common-law protections against double jeopardy. The Circuit Court denied the motion. Petitioner then sought, and this Court granted, a writ of certiorari to review the ruling of the Circuit Court.

For the reasons that follow, we conclude that the State is not barred by the

---

[1]  Md. Code (1977, 2012 Repl. Vol.), § 21-103(a) of the Transportation Article (hereinafter § 21-103(a)).

[2]  Md. Code (1977, 2012 Repl. Vol.), § 21-904 of the Transportation Article (hereinafter § 21-904).

prohibitions against double jeopardy from pursuing the fleeing and eluding charges in the Circuit Court. We therefore affirm the denial of Petitioner's motion to dismiss.

I.

On the night of August 19, 2011, Officer Jonathan Kelly of the Charles County Sheriff's Office was on patrol in a residential neighborhood in La Plata, wearing his uniform and driving a marked car.[3] Observing a Toyota Camry operating without headlights illuminated, Officer Kelly decided to initiate a traffic stop. He pulled in front of that vehicle and activated his emergency lights. The vehicle "initially stopped for a brief moment," but then drove around Officer Kelly's patrol car and continued down the street. Officer Kelly pursued the vehicle for approximately one half-mile until it came to a stop outside an apartment complex, at which point the driver and passenger exited the vehicle and ran into a wooded area behind the complex. Officer Kelly did not follow, instead awaiting the arrival of other officers on the scene.

After speaking with the owner of the Camry, Tarra Goldring, Officer Kelly suspected that Petitioner, Goldring's boyfriend at the time, may have been the driver of the vehicle during the attempted traffic stop. Officer Kelly viewed a photograph of Petitioner in a computer database confirming that it was Petitioner he had seen driving; he then filed an Application for Statement of Charges the following day. Petitioner was charged in the

_____

[3] Although in this case we review the Circuit Court's denial of Petitioner's motion to dismiss, we draw the underlying facts from evidence adduced at the District Court trial.

-2-

District Court with various traffic offenses and, relevant to this appeal, disobeying a lawful

order or direction of a police officer and four counts of fleeing and eluding police.[4]

*The District Court Trial*

Petitioner was tried before the District Court of Maryland, sitting in Charles County.

Officer Kelly was the only witness for the State, and, at the conclusion of the State's case,

Petitioner's counsel made a motion for judgment of acquittal as to all charges. Pertinent

here, the District Court granted the motion as to the disobeying a lawful order charge,

reasoning that Officer Kelly had not given an order or direction by mere activation of his

patrol car's emergency lights: "I just don't get the nexus between turning on the lights being

an order or direction of a police officer. Obviously, there was an implication with that, but

again, I think that's covered with the failure to stop." At the conclusion of trial, the court

found Petitioner guilty of four counts of fleeing and eluding police, along with other traffic

offenses. Petitioner filed a notice of *de novo* appeal to the Circuit Court.[5]

*The Circuit Court Motions Hearing*

Prior to trial in the Circuit Court, Petitioner filed a motion to dismiss the fleeing and

---

[4] As we shall see, there are multiple iterations of the offense of fleeing and eluding police under § 21-904. Petitioner was charged with attempting to elude a police officer in uniform by willfully failing to stop his vehicle; attempting to elude a police officer in uniform by fleeing on foot; attempting to elude a police officer in an appropriately marked vehicle by willfully failing to stop his vehicle; and attempting to elude a police officer in an appropriately marked vehicle by fleeing on foot.

[5] *See* Md. Code (1973, 2013 Repl. Vol., 2013 Supp.), § 12-401(f) of the Courts and Judicial Proceedings Article.

eluding charges. In the motion, Petitioner argued that the District Court's judgment of acquittal as to the charge of disobeying a lawful order barred trial in the Circuit Court for the offense of fleeing and eluding. Petitioner asserted that disobeying a lawful order or direction of a police officer is the lesser-included offense of fleeing and eluding police, rendering both offenses the "same" for double jeopardy purposes.

On November 7, 2012, the Circuit Court held a hearing on the motion. The State, characterizing Petitioner's argument as an allegation that the District Court had erred in rendering its verdicts, claimed that Petitioner could not make such an argument upon *de novo* appeal, as "the trial [in District Court] has been washed away." As to the substance of Petitioner's claim, the State argued that, by operation of the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the crimes of disobeying a lawful order and fleeing and eluding are not the same offense for double jeopardy purposes: Under the fleeing and eluding statute, drivers must stop their vehicles regardless of whether the police officer's signal to stop is lawful, whereas under the disobeying a lawful order statute, the police officer's order or direction must be lawful for the offense to lie, thereby making each offense distinct from the other. The Circuit Court, without elaboration, denied the motion to dismiss the four counts of fleeing and eluding.

*The Appeal*

Petitioner filed a "Notice of Appeal," seeking review in this Court of the Circuit Court's denial of his motion to dismiss the *de novo* appeal in that court. Ordinarily, appellate

courts review only final judgments. Md. Code (1973, 2013 Repl. Vol.), § 12-301 of the

Courts and Judicial Proceedings Article (hereinafter CJ § 12-301). Under the "collateral

order" doctrine, however, in a limited class of cases we allow appellate review prior to the

entry of a final judgment and, for purposes of such review, treat those interlocutory orders

as "final judgments," under CJ § 12-301, "'without regard to the posture of the case.'"

*Fuller v. State*, 397 Md. 372, 383 (2007) (quoting *Jackson v. State*, 385 Md. 259, 266-67

(2000)). Denials of motions to dismiss on the ground of double jeopardy compose a category

warranting immediate review. *Stephens v. State*, 420 Md. 495, 505-06 (2011) (citing *Parrott

v. State*, 301 Md. 411, 424-25 (1984)).

We treated Petitioner's notice of appeal as a petition for writ of certiorari[6] and granted

that petition to answer the following question, as Petitioner posed it in his supplemental

petition:

> Did the Circuit Court err in denying Mr. Scriber's motion to dismiss charges
> of fleeing and eluding under Transportation Article § 21-904 based on double
> jeopardy where the District Court had previously acquitted him of willfully
> disobeying a lawful order or direction of a police officer under Transportation
> Article § 21-103(a)?

Whether double jeopardy principles bar prosecution of the fleeing and eluding charges in the

Circuit Court is a question of law; we therefore grant no deference to the lower court's

---

[6] Further appellate review of a final judgment of the Circuit Court on *de novo* appeal
of a District Court judgment is by way of a petition for writ of certiorari to this Court. *Silver
v. State*, 420 Md. 415, 426 n.14 (2011) (citing Md. Code (1973, 2013 Repl. Vol.), § 12-305
of the Courts and Judicial Proceedings Article); *State v. Jefferson*, 319 Md. 674, 678 n.1
(1990) (citing same).

resolution of the matter. *Giddins v. State*, 393 Md. 1, 15 (2006) (citations omitted).

## II.

Petitioner's primary contention on appeal is that prosecution of the fleeing and eluding charges in the Circuit Court violates the federal constitutional and state common-law prohibitions against double jeopardy.

"The Fifth Amendment to the United States Constitution forbids any person from being 'twice put in jeopardy of life or limb.'" *Odum v. State*, 412 Md. 593, 603 (2010) (quoting U.S. Const. am. V). The Fifth Amendment prohibition "against making a defendant twice accountable for the same offense" is applicable to the states through the Fourteenth Amendment. *State v. Long*, 405 Md. 527, 535-36 (2008) (citing *Benton v. Maryland*, 395 U.S. 784, 794 (1969)). Also, "[d]espite the fact that the Maryland Constitution lacks an explicit double jeopardy clause, Maryland common law provides well-established protections for individuals against being twice put in jeopardy." *Long*, 405 Md. at 536 (citing *Taylor v. State*, 381 Md. 602, 610 (2004)). Double jeopardy "bars multiple punishments and trials for the same offense." *Long*, 405 Md. at 536 (citing *United States v. Wilson*, 420 U.S. 332, 343 (1975)).

In order for two charges to represent the same offense for double jeopardy purposes, they must be the same "in fact" and "in law." *See Anderson v. State*, 385 Md. 123, 131 (2005). To determine whether charges are the same in fact, we look to whether they arise out of the same incident or course of conduct. *Id.* To determine whether two offenses arising

out of the same incident are the same in law, we apply the "same elements" test set forth by the Supreme Court of the United States in *Blockburger*. *Anderson*, 385 Md. at 131. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Thomas v. State*, 277 Md. 257, 265 (1976) (quoting *Blockburger*, 284 U.S. at 304).

Lesser-included and greater-inclusive offenses are considered the same offense for double jeopardy purposes. In *Brown v. Ohio*, 432 U.S. 161 (1977), the Supreme Court explained that a lesser-included offense, which requires no more proof than that required for conviction of a greater-inclusive offense, is the "same offense" as the greater-inclusive offense by application of the *Blockburger* test. *Brown*, 432 U.S. at 168. Whichever is prosecuted first, "the Fifth Amendment forbids successive prosecution . . . for a greater and lesser included offense." *Id.* at 169.

Petitioner contends that disobeying a lawful order is a lesser-included offense of fleeing and eluding police and therefore the two offenses are the same for double jeopardy purposes. As he was acquitted of disobeying a lawful order, Petitioner maintains that he may not be prosecuted in the Circuit Court on the fleeing and eluding charges. Trial in the Circuit Court on the fleeing and eluding charges, he argues, would be a second prosecution for the same offense, in violation of double jeopardy prohibitions. Essentially, Petitioner seeks to avail himself of the common-law plea in bar of *autrefois acquit*. *State v. Taylor*, 371 Md.

617, 651 (2002) (quoting *Daff v. State*, 317 Md. 678, 684 (1989)).

For its part, the State argues that a *de novo* appeal in Circuit Court is not a subsequent prosecution, but rather "part of a single, continuing jeopardy," and Petitioner's appeal thus "does not trigger double jeopardy analysis." The State adds that, in any event, disobeying a lawful order and fleeing and eluding are not the same offense under *Blockburger*, and therefore acquittal of disobeying a lawful order in District Court does not bar prosecution of fleeing and eluding in Circuit Court.

As we shall explain, we are in agreement with the State that Petitioner's acquittal of disobeying a lawful order does not preclude trial *de novo* in the Circuit Court on the charges of fleeing and eluding because the offenses are not the same for double jeopardy purposes. We therefore shall assume, without deciding, that trial on the fleeing and eluding charges in the *de novo* appeal is a successive—and not a continuing—prosecution.[7]

Determining the respective elements of these offenses is an exercise in statutory construction. "The cardinal rule of statutory construction is to ascertain and effectuate the

---

[7] Although it is unnecessary to decide in this case whether a *de novo* appeal of a criminal conviction is a continuing or successive prosecution, this is not the first occasion on which the question has been presented. In *Justices of Boston Municipal Court v. Lydon*, the Supreme Court grappled with the issue as applied to Massachusetts's two-tier system for trying minor crimes, describing "the nature of the de novo hearing as follows: 'While technically [the defendant] is "tried again," the second stage proceeding can be regarded as but an enlarged, fact-sensitive part of a single, continuous course of judicial proceedings . . . .'" 466 U.S. 294, 309 (1984). Following *Lydon*, in *State v. Anderson*, 320 Md. 17, 28 (1990), we simply assumed, without deciding, that the holding in that case is applicable to the *de novo* appeal system in Maryland.

intent of the Legislature." *Stoddard v. State*, 395 Md. 653, 661 (2006) (quotation omitted).

We have explained that, in determining the Legislature's intent,

> we look first to the language of the statute, giving it its natural and ordinary meaning. . . . When the statutory language is clear, we need not look beyond the statutory language to determine the Legislature's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written.

*Id*. (quotations omitted).

The statutes at issue in this case provide, in relevant part:

**§ 21-103.  Obedience to police officers and summonses.**
(a) *Obedience to orders required.  —*  A person may not willfully disobey any lawful order or direction of any police officer.

**§ 21-904.  Fleeing or eluding police.**
(a) *"Visual or audible signal" defined.  —*  In this section, "visual or audible signal" includes a signal by hand, voice, emergency light or siren.
(b) *Failing to stop vehicle.  —*  If a police officer gives a visual or audible signal to stop and the police officer is in uniform, prominently displaying the police officer's badge or other insignia of office, a driver of a vehicle may not attempt to elude the police officer by:
  (1) Willfully failing to stop the driver's vehicle;
  (2) Fleeing on foot; or
  (3) Any other means.
(c) *Fleeing on foot.  —*  If a police officer gives a visual or audible signal to stop and the police officer, whether or not in uniform, is in a vehicle appropriately marked as an official police vehicle, a driver of a vehicle may not attempt to elude the police officer by:
  (1) Willfully failing to stop the driver's vehicle;
  (2) Fleeing on foot; or
  (3) Any other means.

We deduce from the parties' arguments that there is no dispute that the offense of

fleeing and eluding police requires proof of an element not shared by the offense of

disobeying a lawful order: evasion. The parties' disagreement is over whether the offense of disobeying a lawful order requires proof of an element not shared by fleeing and eluding police.

By Petitioner's calculation, disobeying a lawful order contains no additional element:

> The willful disobedience count requires, as an element, that [the] State prove the defendant "disobey[ed]" the order or direction; the fleeing and eluding counts require that the State prove that the defendant disobeyed a certain kind of direction, *i.e.*, a direction "to stop," in one of two specific ways, *i.e.*, by willfully failing to stop his vehicle or by fleeing on foot. Proof of the latter will always involve proof of the former.

Petitioner premises this argument on the notion that "it is difficult to conceive that a signal to stop by a police officer would not qualify as an 'order or direction.'"

The State argues that the offense of disobeying a lawful order contains an element distinct from those contained in the offense of fleeing and eluding police: lawfulness. The State asserts that drivers should not be permitted to "evaluate the lawfulness of a pursuing police officer's signal to stop and, if unsatisfied, choose to flee." A contrary interpretation, the State contends, would undermine the purpose of the Transportation Article in maintaining a safe environment on Maryland's roads.

We agree with the State that lawfulness is an element of the offense of disobeying a lawful order, but not of the offense of fleeing and eluding police, as the plain language of the statutes demonstrates. Per the statutory language, the offense of fleeing and eluding requires proof of the following elements: (1) a police officer in uniform or in a marked vehicle (2) gives a "signal to stop" (3) and a driver willfully (4) attempts to elude the officer. The

-10-

offense of disobeying a lawful order requires proof of a distinct set of elements: (1) a person willfully (2) disobeys a (3) lawful (4) order or direction (5) of a police officer.

Each statute includes an action on the part of a police officer, and each involves some form of willful disregard in the face of that action, but only the disobeying a lawful order statute specifies that the police order or direction must be lawful. The General Assembly's use of "lawful" in the disobeying a lawful order statute, but not in the fleeing and eluding statute, is significant. "[T]he Legislature is presumed to have meant what it said and said what it meant." *Walzer v. Osborne*, 395 Md. 563, 572 (2006) (quoting *Witte v. Azarian*, 369 Md. 518, 525 (2002)). We may not ignore the words in a statute. As each statute "requires proof of a fact which the other does not," *Blockburger*, 284 U.S. at 304, we hold that disobeying a lawful order and fleeing and eluding police are not the same offense for double jeopardy purposes.

Petitioner relies principally on two cases in support of his assertion that a signal to stop is equivalent to a lawful order or direction: *Washington v. State*, 200 Md. App. 641 (2011), and *Jones v. State*, 319 Md. 279 (1990). In *Washington*, the Court of Special Appeals closely examined § 21-904 to determine whether the appellant properly was given separate sentences for two fleeing and eluding convictions. 200 Md. App. at 644. In holding that he was not, the Court explained that the fleeing and eluding statute sets out a single offense that may be committed in more than one way depending on factors extrinsic to a driver's own conduct, "such as the manner in which a [driver] is afforded notice of the

-11-

obligation to obey." *Id.* at 662. It is the phrase "obligation to obey" in *Washington* that Petitioner suggests gives a signal to stop the same status as an order or direction. Whether a signal to stop is, for practical purposes, the same as a lawful order or direction, however, is not the end point of our analysis. As we have explained, we may not overlook the word "lawful" in the disobeying a lawful order statute.

In *Jones*, this Court held that a police officer saying something to the effect of "Hey, could you come here" to a bicyclist on a public road (which Petitioner characterizes as a "verbal signal") was equivalent to "a formal demand compelling the individual to comply" and thus constituted a seizure under the Fourth Amendment. 319 Md. at 285, 287. The Court then implied that it would have been a violation of § 21-103(a) for the bicyclist not to have stopped in response to the officer's words. *Id.* at 285-86. *Jones* presented an issue entirely different from the one before us in this case, and Petitioner may not rely on this quoted language in *Jones* as authority for the proposition that a signal to stop is, for double jeopardy purposes, the same element as a lawful order or direction under § 21-103(a). These cases cited by Petitioner thus do not undermine our construction of the statutes.

We find support for our construction by way of analogy to another offense whose statutory text includes the word "lawful." At common law, the crime of resisting arrest "require[d] resistance to a lawful arrest . . . . Accordingly, in Maryland, a lawful arrest ordinarily is essential to the offense of resisting arrest." *Busch v. State*, 289 Md. 669, 675 (1981) (citations omitted). Resisting arrest is now a statutory offense. When the General

Assembly enacted the resisting arrest statute, 2004 Maryland Laws, ch. 118, it used language retaining lawfulness as an element of the offense. The statute provides, in relevant part: "A person may not intentionally: (1) resist a lawful arrest; or (2) interfere with an individual who the person has reason to know is a police officer who is making or attempting to make a lawful arrest or detention of another person." Md. Code (2002, 2012 Repl. Vol.), § 9-408(b) of the Criminal Law Article; *see also* Maryland Criminal Pattern Jury Instructions 4:27.1 (2012) (including the lawfulness of the arrest as one of the four elements of the offense of resisting arrest). It is clear that, when a criminal statute includes the adjective "lawful" in describing an order or direction of a police officer, lawfulness is an element of the offense.

Because each of the two crimes at issue here, fleeing and eluding police and disobeying a lawful order or direction of a police officer, contains an element the other does not, the two crimes are not the same for double jeopardy purposes. Consequently, Petitioner's acquittal in District Court of the charge of disobeying a lawful order does not erect a double jeopardy bar to *de novo* trial in the Circuit Court on the charges of fleeing and eluding police.

III.

In the alternative, Petitioner argues that the doctrine of collateral estoppel bars prosecution of the fleeing and eluding charges in the Circuit Court. The Double Jeopardy Clause incorporates the doctrine of collateral estoppel, as the Supreme Court recognized in

*Ashe v. Swenson*, 397 U.S. 436, 444-45 (1970). "The Court in *Ashe* defined collateral estoppel as meaning 'simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Odum*, 412 Md. at 603 (citation omitted).

> Much like the Supreme Court has done in recognizing collateral estoppel as a form of constitutionally based double jeopardy, we recognize the collateral estoppel form of double jeopardy as a part of Maryland common law. We define collateral estoppel in the same way as is done in the federal constitutional context, and, in that regard, we have said that the "critical question to be confronted when considering the proper invocation of the principles of collateral estoppel is 'whether an issue of ultimate fact has been previously determined in favor of the defendant.'" In other words, "if the verdict must have, by logical necessity, decided a particular fact in favor of a defendant, then the State will be barred by collateral estoppel principles from relitigating that fact."

*Id.* at 606 (internal citations omitted).

Petitioner contends that the District Court granted Petitioner's motion for judgment of acquittal as to the disobeying a lawful order charge based on a "finding that [Officer Kelly] did not give an order or direction to stop." Asserting that a signal to stop is "indisputably" an order or direction, Petitioner argues that the District Court "by necessary implication" made a finding that there had been no signal to stop. With this issue of ultimate fact decided, Petitioner claims, he may not be tried at the Circuit Court level on the fleeing and eluding charges.

The State responds that the doctrine of collateral estoppel is inapplicable in the *de novo* appeal context, where "the lower court's findings of fact are completely set aside." The

-14-

State posits that "per force there can never be the collateral estoppel form of double jeopardy" because in a *de novo* appeal "the circuit court owes no deference to the district court's findings of fact or conclusions of law."

We need not pronounce on whether the collateral estoppel form of double jeopardy may be invoked in the *de novo* appeal context.[8] There is no evidence in the record that, in granting Petitioner's motion for judgment of acquittal, the District Court made a finding that Officer Kelly did not give a signal to stop. With Petitioner's motion before the District Court, the following colloquy took place:

> THE COURT: And then, the next count, following that, too, willfully disobeying a lawful order [or] direction of a police officer. Again, we heard evidence that he failed to stop, but I didn't hear any direct testimony from Officer Kelly regarding failing to obey a direct order from a police officer, if there was one, aside from the fact he tried—when he tried to pull him over. Those are the questions the Court has . . . .
>
> ***
>
> THE STATE: Your Honor, I—the State would just—all right, Your Honor, that would be the emergency equipment, the lights being activated. [Petitioner] did not stop for the traffic stop—
>
> THE COURT: It—so you're saying that's a separate offense, beyond failing to stop? . . . In other words, does that require the officer to give the person he's attempting to stop some direction? In other words, this is not an officer-initiated defense. I think this is an officer-initiated defense. Is merely activation of the lights enough? In other words, what did Officer Kelly do

_____

[8] The question remains open. *See Anderson*, 320 Md. at 30 ("[W]e shall assume, *arguendo*, that the doctrine of collateral estoppel would be applicable to prevent a de novo appeal" where the District Court's acquittal "resolved in the defendant's favor a critical issue" to the Circuit Court prosecution.).

-15-

specifically to give [Petitioner] any indication that he wanted him to do something that [Petitioner] didn't do?  You see—you follow me?  Again, fleeing and eluding, I wouldn't have a problem with as far as the judgment of acquittal, but in other words, willfully disobeying a lawful order and direction of a police officer merely turning on the lights, assuming [Petitioner] doesn't stop, is that a lawful order or direction of a police officer?  You follow the Court's logic here?

*\*\**

THE STATE:  Your Honor, I believe it is.  It's . . . directions.  He flipped on his lights and tells him to stop, but—so that is the officer's directions.

THE COURT:  But he didn't tell him to stop, did he?  He just flipped on his lights.

THE STATE:  I believe the . . . lights do tell you to stop.  As soon as those lights go on, you know you're supposed to stop your vehicle, and that is at the direction of the officer that those lights go on.

*\*\**

THE COURT:  Well, [the statute] doesn't elaborate too much . . . .  Again, I just don't get the nexus between turning on the lights being an order or direction of a police officer. Obviously, there was an implication with that, but again, I think that's covered with the failure to stop.  So I am going to grant the defense motion as to—with regard to that charge, as well.

From this exchange, we understand that the District Court was not engaged in making factual findings relevant to its disposition of the fleeing and eluding charges.  Rather, in ruling on Petitioner's motion, the court made a legal determination that a police officer's activation of his patrol car's emergency lights is not tantamount to a lawful order or direction.  Petitioner attributes to the court a logical leap of fact the court did not take, that is, Petitioner treats the court's legal determination that there was no lawful order or direction

as a factual finding that there was no signal to stop. At most, in the course of making its ruling, the District Court made a factual finding insofar as it accepted Officer Kelly's testimony that he had activated his emergency lights. If anything, this furnishes a basis for the District Court's convicting Petitioner of the fleeing and eluding charges. The court's accepting as fact that the officer activated his emergency lights does not preclude further prosecution of the fleeing and eluding charges. Accordingly, we hold that Petitioner's attempt to invoke the doctrine of collateral estoppel is unfounded.

IV.

We hold that prosecution of the fleeing and eluding charges in the Circuit Court does not violate the federal constitutional and state common-law prohibitions against the *autrefois acquit* form of double jeopardy or the doctrine of collateral estoppel. We therefore affirm the Circuit Court for Charles County's denial of Petitioner's motion to dismiss the charges.

**DENIAL BY THE CIRCUIT COURT FOR CHARLES COUNTY OF PETITIONER DWAYNE SCRIBER'S MOTION TO DISMISS AFFIRMED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY PETITIONER.**

-17-