989 A.2d 232

**Robert Alan ODUM, Jr.**

v.

**STATE of Maryland.**

**No. 41, Sept. Term, 2008.**

Court of Appeals of Maryland.

Feb. 23, 2010.

594

Bradford C. Peabody, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore, MD), on brief, for Petitioner.

Steven L. Holcomb, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

BARBERA, J.

During the early morning hours of June 10, 2001, five men, one of whom was Petitioner, came into contact with Michael Patten and Lee Ann Brown. That contact led to the armed robbery, carjacking, kidnapping, and murder of Mr. Patten and Ms. Brown. Petitioner was tried before a jury on charges related to those crimes. The jury acquitted him of all charges save for two counts of kidnapping. He challenged the kidnapping convictions on appeal and won the right to be retried on those charges. See Odum v. State, 156 Md.App. 184, 846 A.2d 445 (2004). At the retrial, the State presented, over Petitioner's objection, evidence concerning the crimes of which he was acquitted. Petitioner again was convicted of both kidnapping charges.

Petitioner has challenged those convictions, arguing that the jury should not have been presented with evidence of the murders and other criminal conduct involving Petitioner and his cohorts. He advances two grounds in support: (1) the State was collaterally estopped from presenting evidence of

the crimes of which he was acquitted at the first trial; and (2) the evidence was not relevant to prove the kidnappings and, even if relevant, the trial court should have excluded it because its probative value was outweighed by the danger of unfair prejudice to his right to a fair trial. For the reasons that follow, we reject both arguments and hold that the court neither erred nor abused its discretion in admitting the evidence.

I.

The jury heard the following evidence at Petitioner's retrial. On the night of Saturday, June 9, 2001, Petitioner attended a party in the Fort Washington area of Prince George's County, near where he lived. Aaron Hollingsworth, Cortez Carroll, and Marco Butler, all neighbors and friends of Petitioner, were also in attendance at the party. After the party, the four men were joined by another friend from the neighborhood, Eric Thomas. The five men—Petitioner, Hollingsworth, Butler, Carroll, and Thomas—found their way during the early morning hours of June 10 to a nearby wooded area adjacent to the parking lot of the Fort Washington United Methodist Church. Butler and Carroll were carrying handguns.

Sometime after 2:00 a.m., an Acura was driven onto the church parking lot. Michael Patten, the owner of the Acura, was behind the wheel. In the passenger seat was his friend, Lee Ann Brown. Mr. Patten and Ms. Brown had come from a night of entertainment at a nightclub in Washington, D.C. Mr. Patten, a congregant at the Fort Washington United Methodist Church, evidently pulled the car onto the church parking lot to allow Ms. Brown to step out and relieve herself. Shortly thereafter, the two were confronted by Petitioner and his companions.

Aaron Hollingsworth, who testified for the State as part of a plea bargain, described what happened next. One of the men approached the car and ordered Mr. Patten out of it. Hollingsworth then went up to Mr. Patten and demanded money.

When Mr. Patten claimed he had no money, Hollingsworth searched him and found $30. Hollingsworth, angered that Mr. Patten had lied to him, struck Mr. Patten several times. When Mr. Patten fell to the ground, Hollingsworth kicked him.

Meanwhile, others in the group approached Ms. Brown, who by this time was standing next to the passenger side of the car. Hollingsworth and one other member of the group, whose identity Hollingsworth did not recall, put the unconscious Mr. Patten into the trunk of the Acura. Hollingsworth and a second, unnamed member of the group then forced Ms. Brown into the trunk. Hollingsworth hit Ms. Brown, and Carroll pistol whipped her, to make her duck down into the trunk. Hollingsworth closed the trunk by sitting on its lid.

Then, with Eric Thomas behind the wheel of the Acura and the victims in the trunk, the five men drove ten to fifteen minutes to a secluded spot in the Accokeek area of Prince George's County. During the drive to Accokeek, Hollingsworth gave $5 to each of the men from the money he had taken from Mr. Patten. Upon arrival at their destination, Hollingsworth, with help from one of the others whose identity he could not recall, removed Mr. Patten and Ms. Brown from the trunk of the car. Soon thereafter, one or more persons (not Hollingsworth) shot and killed Mr. Patten and Ms. Brown.

The five men, including Petitioner, got back into the car, with Eric Thomas once again in the driver's seat. Thomas, who was drunk, almost crashed the car after driving it a short distance. Petitioner then took over the driving. The five men drove to Southeast Washington, where they pooled the $30 that Hollingsworth had earlier distributed to them and used $20 of it to purchase marijuana. The five men then drove to an ATM machine and withdrew $20, using Ms. Brown's ATM card and PIN that at some point during the episode one of the five men had obtained from her.[1] Thereafter, the men headed

---

1. Evidence adduced at the first trial showed that Carroll had gone through Ms. Brown's purse at the church parking lot and found her

home. During the ride, they discussed that "this shouldn't come back up no more," which, according to Hollingsworth, meant that they were "not to talk about it."

The State presented significant forensic evidence and witness testimony corroborating the testimony of Hollingsworth. Specifically, the State introduced evidence that the victims' bodies were discovered in Accokeek on the afternoon of June 10, 2001, the abandoned vehicle was found several days later, and blood stains on the church parking lot were created by Mr. Patten's blood. The State offered evidence that the exterior of the Acura had Mr. Patten's blood on it, the trunk of the Acura contained an earring and the blood of both Mr. Patten and Ms. Brown, and the rearview mirror contained a latent fingerprint matching Petitioner's fingerprint. The State also offered evidence of shell casings that were found under and near the victims' bodies.

### The Motion in Limine

All of the above evidence relating to the murder of Mr. Patten and Ms. Brown and the subsequent activity of Petitioner, including use of the robbery proceeds to purchase drugs, was admitted over the continuing objection of the defense. Petitioner challenged the admissibility of that evidence at a pretrial hearing. He argued that evidence relating to the murders and other criminal activity was barred by the doctrine of collateral estoppel, among other related constitutional and common law doctrines. Petitioner also argued that evidence of those crimes was not relevant to the kidnapping charges because the kidnappings were complete as soon as the victims were placed in the trunk of their car and driven away. He further argued that the challenged evidence, even if relevant to the kidnappings, was unduly prejudicial to his right to a fair trial, rendering it inadmissible under Maryland Rule 5–403. Petitioner offered to stipulate that the victims were

---

ATM card, and that Ms. Brown volunteered the PIN. *See Odum v. State,* 156 Md.App. at 190, 846 A.2d at 449. No evidence of these facts was introduced at the retrial.

unavailable to testify and to agree to an instruction "that the jury is not to draw any negative inferences from that." [2]

The State responded that the doctrine of collateral estoppel neither prohibited retrial on the kidnapping charges nor foreclosed admission of evidence of the crimes of which Petitioner was acquitted. The State also argued that evidence of those crimes was relevant to make sense of the charged kidnappings, show Petitioner's role in the entire episode, and corroborate Hollingsworth's testimony concerning what happened and the part Petitioner played. The State said: "I can't imagine a jury listening to a case involving a kidnapping, not being presented with information as to the force used, as to the location of the transportation, and where the journey ended. And why it ended. And how it ended." The State argued further that the jury naturally would question the failure of the State to have the victims testify. The State also pointed out that the jury needed to hear corroboration of Petitioner's statement (which, as it turned out, was not admitted into evidence) and Hollingsworth's testimony implicating Petitioner as an accomplice. Finally, the State argued: "What happened afterwards is very much relevant to show whether or not [Petitioner] was part of the team."

The trial court denied Petitioner's motion to exclude evidence of the crimes of which he had been acquitted at the first trial:

[T]he court finds that the events leading up to the course and aftermath of the kidnappings are certainly relevant to

---

**2.** Petitioner also argued that he was entitled, as a matter of due process, to have admitted into evidence "a public record" reflecting his acquittal on each of the other charges. We could find no record indication that the State objected to the admission of that evidence, either then or when Petitioner re-raised the issue, after the State rested its case in chief. At that time, defense counsel stated that the "only possible thing" the defense would present "would be certified copies of [Petitioner's] acquittal or a stipulation concerning that."

Petitioner rested without putting on a defense case. Consequently, the jury was not presented with evidence of the acquittals. Petitioner does not contend that the court should have informed the jury of that fact.

the kidnappings charge [sic], to the overall criminal venture and to the Defendant's role and participation with others in it. Having viewed the transcripts of the prior trial and proceedings, the course of the State's order and burden of proof, the fact that the series of events and crimes are so inextricably intertwined in time and circumstances and that the evidence integral to prove one is similarly integral to proof of the other, the Court finds that the probative value of evidence of events leading up to the kidnappings and evidence of events that take place after the kidnappings outweigh any unfair prejudice.

Assuming that there are no problems of identity, however, the Court finds, certainly, with respect to the scene, photographs of victims and the autopsy photographs, that the prejudice to the Defendant would outweigh any probative value in that light. The Court will reserve its ruling on the autopsy report depending upon the course of certain events that may or may not take place during trial.[3]

The court granted Petitioner a continuing objection to any and all evidence or testimony concerning the facts of the crimes of which he was acquitted in the first trial.

### The Appeal

Petitioner argued before the Court of Special Appeals that the trial court's allowance of evidence of the other crimes that

---

3. The autopsy reports did not come into evidence. The State presented to the jury the parties' stipulation that the autopsy of Mr. Patten disclosed that he died of gunshot wounds and his body displayed
 multiple abrasions, scrapes, scratches, lacerations, tears and contusions, bruises of the head and face, consistent with the deceased being struck a minimum of twelve times with a blunt object or objects. The abrasions and contusions on the back of the hands and forearms are consistent with defense wounds.

The parties' stipulation showed that the autopsy of Ms. Brown disclosed that she, too, died of gunshot wounds, and her body showed
 numerous lacerations, skin tears, skull fractures, contusions, bruises and abrasions, scrapes of the head and face, consistent with the deceased being struck a minimum of ten times with a blunt object or objects. The multiple round and oval contusions, bruises of the upper arms, forearms and legs, are consistent with the victim being grabbed or being involved in a struggle.

occurred during the criminal episode violated the doctrine of collateral estoppel and the relevant rules of evidence. The Court of Special Appeals, over the dissent of one judge, affirmed the convictions in an unreported opinion.

With regard to Petitioner's collateral estoppel argument, the Court of Special Appeals observed that "the doctrine of collateral estoppel prohibits re-litigation of the *same factual issue* [,]" (emphasis in original), and Petitioner "has not established that—when acquitting him of various charges—the jury resolved in his favor any factual issue that would have to be resolved in the second trial." The Court therefore held that "the evidence was not subject to exclusion on the ground of double jeopardy collateral estoppel." The Court further held that the trial court correctly ruled that the other crimes evidence was relevant to the charged kidnapping offenses and did not abuse its discretion in deciding that the probative value of the evidence outweighed the risk of unfair prejudice to Petitioner.

Petitioner filed a petition for writ of certiorari, which we granted, *Odum v. State,* 405 Md. 290, 950 A.2d 828 (2008), to answer the following question:

> Was it was error to allow, at the retrial, evidence of the many other felonies and crimes of violence of which Petitioner was acquitted by a jury, at his first trial?

## II.

■ Petitioner argues, as he did in the Court of Special Appeals, that for two reasons the trial court committed reversible error by admitting evidence of the crimes of which he was acquitted at the first trial. He argues that admission of the evidence ran afoul of the doctrine of collateral estoppel. He further argues that the evidence was irrelevant to proof of the kidnapping charges, and, even if it was relevant, the trial court abused its discretion by admitting the evidence because its probative value was outweighed by the danger of unfair prejudice to him. We shall address each argument, in turn.

 

## Collateral Estoppel

 The Fifth Amendment to the United States Constitution forbids any person from being "twice put in jeopardy of life or limb." That prohibition "against making a defendant twice accountable for the same offense is a provision applicable to the States" through the Fourteenth Amendment. *See State v. Long,* 405 Md. 527, 535–36, 954 A.2d 1083, 1088–89 (2008) (citing *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969)).

The Supreme Court has recognized that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel. *Ashe v. Swenson,* 397 U.S. 436, 444–45, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475–76 (1970). The Court in *Ashe* defined collateral estoppel as meaning "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

*Ashe* involved the robbery by a group of masked men of six persons playing poker in the basement of a home. Ashe was tried for the robbery of one of the poker players and acquitted. He was later tried for the robbery of another of the players and convicted.

The Supreme Court reversed the conviction, holding that the State was collaterally estopped from pursuing the second robbery charge. The Court cautioned that the "rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76. Therefore, "[w]here a previous judgment of acquittal was based on a general verdict," courts must "examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* (internal quotation marks and citation omitted). Applying

that rule, the Court concluded that the acquittal of Ashe in the first trial barred the second trial because

> the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that [the named victim in that case] had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether [Ashe] had been one of the robbers. And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of [the second named victim] wholly impermissible.

*Id.* at 445, 90 S.Ct. at 1195, 25 L.Ed.2d at 476.

Later, in *Dowling v. United States,* 493 U.S. 342, 347–48, 110 S.Ct. 668, 671–72, 107 L.Ed.2d 708, 717 (1990), the Court was asked to apply the rationale and holding of *Ashe* to reverse the defendant Dowling's bank robbery conviction. The government had been permitted to offer at trial on the bank robbery charges evidence that Dowling had been involved in a burglary two weeks after the bank robbery, notwithstanding that the trial of the burglary case had resulted in his acquittal. Dowling argued that, by extension of the rationale underlying *Ashe,* the Government should have been collaterally estopped from offering that evidence.

The Court first considered the lower burden of proof that governs the admission of "similar act evidence," under Federal Rule of Evidence 404(b). The Court noted that, under that rule, " 'similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor.' " *Id.* at 348, 110 S.Ct. at 672, 107 L.Ed.2d at 718 (quoting *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771, 782 (1988)). Further, "[b]ecause a jury might reasonably conclude that Dowling was the masked man who entered [the burglary victim's] home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial, the collateral-estoppel component of the Double Jeopardy Clause is inapposite." *Dowling,* 493 U.S. at 348–49, 110 S.Ct. at 672,

107 L.Ed.2d at 718. In other words, a defendant's acquittal of a charged crime does not preclude the prosecution, on collateral estoppel grounds, from offering at a later proceeding evidence of the defendant's commission of the crime, so long as the admissibility of evidence of the defendant's commission of that other crime is governed by a lower standard of proof. *Id.* at 349–50, 110 S.Ct. at 672–73, 107 L.Ed.2d at 719.

The Court added that evidence of the burglary was not barred in Dowling's bank robbery trial, even under an *Ashe* analysis. The Court "agree[d] with the Government that the challenged evidence was nevertheless admissible [under *Ashe* ] because Dowling did not demonstrate that his acquittal in his first trial represented a jury determination that he was not one of the men" who participated in the burglary that formed the basis of the other crime evidence. *Id.* at 353, 110 S.Ct. at 675, 107 L.Ed.2d at 721. The Court adopted the rule employed by a number of United States Courts of Appeals in cases applying *Ashe* that "place[s] the burden on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Id.* at 350–51, 110 S.Ct. at 673, 107 L.Ed.2d at 719. After examining the entire record in the case, as required by *Ashe,* the Court concluded: "There are any number of possible explanations for the jury's acquittal verdict at Dowling's first trial. As the record stands, there is nothing at all that persuasively indicates that the question of identity was at issue and was determined in Dowling's favor at the prior trial. . . ." *Id.* at 352, 110 S.Ct. at 674, 107 L.Ed.2d at 720. Consequently, Dowling's acquittal of the subsequent burglary did not bar admission of evidence of that crime at his bank robbery trial.[4] *Id.* at 353, 110 S.Ct. at 675, 107 L.Ed.2d at 721.

---

4. The Supreme Court further addressed the collateral estoppel doctrine in *Yeager v. United States,* —— U.S. ——, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). That case involved the retrial of a defendant whose first trial resulted in the jury's acquittal on some counts and failure to return a verdict on other counts, resulting in a mistrial on the counts on which the jury had hung. The issue before the Court was whether, in

■ Much like the Supreme Court has done in recognizing collateral estoppel as a form of constitutionally based double jeopardy, we recognize the collateral estoppel form of double jeopardy as a part of Maryland common law. *See Long,* 405 Md. at 538, 954 A.2d at 1090. We define collateral estoppel in the same way as is done in the federal constitutional context, and, in that regard, we have said that the "critical question to be confronted when considering the proper invocation of the principles of collateral estoppel is 'whether an issue of ultimate fact has been previously determined in favor of the defendant.'" *Id.* at 539, 954 A.2d at 1090 (quoting *Butler v. State,* 335 Md. 238, 253, 643 A.2d 389, 396 (1994)). In other words, "if the verdict must have, by logical necessity, decided a particular fact in favor of a defendant, then the State will be barred by collateral estoppel principles from relitigating that fact." *Butler,* 335 Md. at 253, 643 A.2d at 396 (internal quotation marks and citation omitted). And, as did the *Dowling* Court, we place the burden of proof on the defendant "to demonstrate that the fact for which he or she is seeking to bar relitigation was decided in a prior proceeding." *Long,* 405 Md. at 539, 954 A.2d at 1091. That burden is a difficult one to carry. *See State v. Woodson,* 338 Md. 322, 331, 658 A.2d 272, 277 (1995) (stating that "a defendant has a difficult burden to

---

determining the preclusive effect of a jury's verdict of acquittal, consideration could be given to the jury's failure to render a verdict on other counts. *Id.* at 2362–63, 174 L.Ed.2d at 83.

The *Yeager* Court reversed the decision of the Court of Appeals for the Fifth Circuit, which had concluded that the apparent inconsistencies between the acquittals and the hung counts meant that the Government was not precluded from re-trying Yeager on the hung counts. The Court reasoned:

A hung count is not a "relevant" part of the "record of [the] prior proceeding." *See Ashe,* 397 U.S., at 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (internal quotation marks omitted). Because a jury speaks only through its verdict, its failure to reach a verdict cannot—by negative implication—yield a piece of information that helps put together the trial puzzle. A mistried count is therefore nothing like the other forms of record material that *Ashe* suggested should be part of the preclusion inquiry.

*Yeager,* 129 S.Ct. at 2367, 174 L.Ed.2d at 89 (alteration in the original). *Yeager* is relevant to the present case only insofar as the Supreme Court reaffirmed the collateral estoppel doctrine, as defined in *Ashe.*

overcome in establishing that the issue was actually decided in the first proceeding").

We agree with the Court of Special Appeals that Petitioner did not carry the difficult burden of establishing that the State was collaterally estopped from offering evidence of the other crimes that occurred before and after the kidnappings. Like the trial court did when ruling on the motion in limine and the Court of Special Appeals did when reviewing the trial court's ruling, we have examined the entire record, including the transcript of the first trial. The first jury's guilty verdicts on the kidnapping counts are easily reconciled with the jury's acquittals on the remaining counts.

Petitioner's confession to the police, which the jury in the first trial saw and heard about, provides one rational explanation for the verdicts. Petitioner told the police that he did not participate in the initial encounter between the victims and his cohorts, but rather observed it from a vantage point across the street from the church parking lot. He also told the police that he accompanied the others in the car ride to Accokeek only because two of his cohorts, Thomas and Carroll, told him to do so, and he "was scared." The jury rationally could have credited Petitioner's assertion that he did not participate in the robberies, carjacking, murders, and other criminal behavior, while rejecting his assertion that he accompanied the others in the kidnappings solely out of fear for his safety.

There is, however, an even more fundamental impediment to Petitioner's collateral estoppel argument. The acquittals of Petitioner at the first trial did not preclude the State at the retrial from offering evidence of his involvement in the commission of those crimes, by application of the *Dowling* rationale that a defendant's acquittal of a crime does not erect a collateral estoppel bar to admission of evidence of the defendant's commission of that crime at a later proceeding. As the *Dowling* Court held, other crimes evidence, under Federal Rule of Evidence 404(b), is subject to a lower burden of proof than is required for conviction. 493 U.S. at 348, 110 S.Ct. at 672, 107 L.Ed.2d at 718. For reasons we shall discuss in the

next part of this opinion, evidence that Petitioner was involved in the other criminal activity that occurred during the same episode as the charged kidnappings is not "other crimes" evidence, as that term is used in Maryland Rule 5–404(b). Even so, the *Dowling* rationale for why the State is not collaterally estopped from offering evidence of the offenses of which Petitioner was acquitted applies with equal force to the present case, because the admissibility of that evidence is not dependent on the State's having to establish, beyond a reasonable doubt, that Petitioner committed those offenses.

In sum, the mere fact that the jury in the first trial acquitted Petitioner of the counts charging him with the murder and other offenses that occurred immediately before and after the kidnappings does not present a collateral estoppel bar to admission of evidence of those crimes at Petitioner's retrial for the kidnappings.

### The Rules of Evidence

Petitioner also argues on evidentiary grounds that (1) evidence of his involvement in the murders and other criminal activity that occurred during the episode was inadmissible because it was irrelevant to the charged kidnapping offenses, and (2) that evidence, even if relevant, should have been excluded because its probative value was outweighed by the danger of unfair prejudice to him.

 It is settled that,

"The real test of admissibility of evidence in a criminal case is the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue.... [E]vidence, to be admissible, must be relevant to the issues and must tend either to establish or disprove them. Evidence which is thus not probative of the proposition at which it is directed is deemed irrelevant."

*Sifrit v. State,* 383 Md. 116, 129, 857 A.2d 88, 95 (2004) (quoting *Dorsey v. State,* 276 Md. 638, 643, 350 A.2d 665, 668–669 (1976)).

"Relevant evidence" is defined in our rules of evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401. Relevant evidence is generally admissible; evidence that is not relevant is never admissible. *See* Md. Rule 5–402 (providing: "Except as otherwise provided by constitutions, statutes or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible. Evidence that is not relevant is not admissible"); *Merzbacher v. State,* 346 Md. 391, 404, 697 A.2d 432, 439 (1997).

Although Rule 5–402 creates a presumption of admissibility of relevant evidence, other rules of evidence, for various reasons, restrict its admissibility. Maryland Rule 5–403 is one such rule. That rule provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

We shall address Petitioner's contentions that evidence of the other crimes that occurred during the criminal episode was irrelevant to proof that he committed the kidnappings and, even if that evidence were relevant, it was nonetheless inadmissible, by application of Rule 5–403. Before we do, we dispose of an issue that arose when the appeal was before the Court of Special Appeals and deals with the applicability, if any, to this case of Maryland Rule 5–404(b). That rule of evidence restricts the admissibility of evidence of "other crimes, wrongs, or acts," unless that evidence has special relevance to the case. *Ayers v. State,* 335 Md. 602, 630–31, 645 A.2d 22, 36 (1994). Rule 5–404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

common scheme or plan, knowledge, identity, or absence of mistake or accident."

■ Rule 5–404(b) "embodies the Maryland common law of evidence concerning other crimes [ ], which existed prior to the adoption of the Rule." *Boyd v. State*, 399 Md. 457, 482, 924 A.2d 1112, 1126 (2007). Under the common law rule, "in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is . . . inadmissible." *Ross v. State*, 276 Md. 664, 669, 350 A.2d 680, 684 (1976) (emphasis added); *accord Merzbacher v. State*, 346 Md. at 410, 697 A.2d at 441–42 (quoting *Ross* for the rule that other crimes evidence is generally inadmissible if it is evidence of conduct " 'wholly independent of that for which [the appellant] was on trial' ").

There are two reasons for this general rule of exclusion. *Ayers*, 335 Md. at 630, 645 A.2d at 36. " 'First, if a jury considers a defendant's prior criminal activity, it may decide to convict and punish him for having a criminal disposition. Second, a jury might infer that because the defendant has committed crimes in the past, he is more likely to have committed the crime for which he is being tried.' " *Id.* (quoting *Straughn v. State*, 297 Md. 329, 333, 465 A.2d 1166, 1168–69 (1983)); *see also Terry v. State*, 332 Md. 329, 334, 631 A.2d 424, 426 (1993) (other crimes evidence "is excluded because it may tend to confuse the jurors, predispose them to a belief in the defendant's guilt, or prejudice their minds against the defendant").[5]

The Court of Special Appeals elaborated on this point in *Dixon v. State*, 133 Md.App. 325, 330–31, 755 A.2d 560, 562–63

---

5. We noted in *Ayers* that, in some prior cases, "[w]e have commented that other crimes evidence is inadmissible because it is irrelevant. Common sense, however, dictates that evidence of other bad acts is in fact relevant in most cases; rather the reason for the exclusion of such evidence is that it is generally too prejudicial." 335 Md. at 631, n. 8, 645 A.2d at 36, n. 8 (citations omitted).

(2000), *rev'd on other grounds,* 364 Md. 209, 772 A.2d 283 (2001). The court explained why evidence of uncharged criminal activity that takes place at the crime scene "does not necessarily engage the gears of 'other crimes' evidence law":

The ultimate end to be served by the ban on "other crimes" evidence is that the State should not be permitted to bring in "out of left field" the fact that on some other occasion the defendant committed a crime. The danger being guarded against is that such past behavior will be offered to show and will be used by a jury to conclude that the defendant has a propensity to commit crime. The fear is that the jury may convict him in the case on trial because of something other than what he did in that case, to wit, because of his criminal propensity.

\* \* \*

Although the direct evidence of what happens at a crime scene may sometimes show some possible crime in addition to the one literally charged, that coincidental possibility does not necessarily engage the gears of "other crimes" evidence law.

*See also* LYNN MCLAIN, MARYLAND EVIDENCE STATE AND FEDERAL § 404.5 (2009 Supp.) ("Acts that are part of the alleged crime itself (such as acts in furtherance of an alleged conspiracy), or put in its immediate context, are not 'other acts' and thus do not have to comply with Md. Rule 5–404(b).").

The above authorities reflect the common law principle that the strictures of "other crimes" evidence law, now embodied in Rule 5–404(b), do not apply to evidence of crimes (or other bad acts or wrongs) that arise during the same transaction and are intrinsic to the charged crime or crimes. We define "intrinsic" as including, at a minimum, other crimes that are so connected or blended in point of time or circumstances with the crime or crimes charged that they form a single transaction, and the crime or crimes charged cannot be fully shown or explained without evidence of the other crimes. Our conclusion is in accord with the interpretation that various federal courts of appeal have given to Federal Rule of Evidence

404(b), from which Maryland Rule 404(b) is derived. *See, e.g., United States v. Chin,* 83 F.3d 83, 87–88 (4th Cir.1996) (collecting cases from other federal courts of appeal and stating: "We agree with the other circuits that where testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible"; and defining as "intrinsic," other criminal acts that are "inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.").[6]

---

**6.** Other courts are to like effect. *See, e.g., United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990) (stating that whether evidence comes within Fed. R. of Evid. 404(b) depends on whether the evidence is extrinsic or intrinsic, and explaining that " 'other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged"); *United States v. Weeks,* 716 F.2d 830, 832 (11th Cir.1983) (other act evidence does not fall within the proscription of Fed. R. of Evid. 404(b) if the evidence is inextricably intertwined with the evidence regarding the charged offense); *see also People v. Quintana,* 882 P.2d 1366, 1373 (Co.1994) (applying the same interpretation to its "other crimes" evidence rule, CER 404(b)); *accord Griffin v. State,* 639 So.2d 966, 968 (Fla.1994) (stating that "evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged" is admissible under the "other crimes, wrongs, or acts" section of the relevant Florida statute); *State v. Fool Bull,* 745 N.W.2d 380, 387 (S.D.2008) (holding that the other crimes evidence was part of the res gestae and therefore South Dakota's "Rule 404(b) did not apply"); *State v. Cyrus,* 222 W.Va. 214, 664 S.E.2d 99, 103 (2008) (stating that "evidence which is 'intrinsic' to the indicted charge is not governed by [West Virginia's] Rule 404(b)").

We are aware that, in *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980), we relied on the *Ross* common law "other crimes" analysis to uphold the trial court's decision to allow joinder at a single trial of multiple indictments that charged various offenses arising out of a single criminal episode. Our approach in that case was to treat the offenses set forth in each of the indictments as independent of the crimes charged in the other indictments, thereby triggering an "other crimes evidence" analysis. 287 Md. at 711, 415 A.2d at 838. By application of that analysis, we concluded that the "other crimes" at issue came within what we characterized as an "exception" to the general prohibition of other crimes evidence. That "exception permits the admission of evidence of other crimes when the several offenses are so connected or blended in point of time or circumstances that they

In the present case, evidence of the robberies that precipitated the kidnappings, the carjacking that facilitated the kidnappings, the murders that brought a tragic close to the kidnappings, and the subsequent use of the proceeds of the robbery to purchase drugs, arose out of the same criminal episode. We recognized in *State v. Stouffer*, 352 Md. 97, 113, 721 A.2d 207, 215 (1998), that a kidnapping is sometimes incidental to another crime, and we identified several factors relevant to identifying the connection between the offenses:

> How far, and where, was the victim taken? How long was the victim detained in relation to what was necessary to complete the crime? Was the movement either inherent as an element, or, as a practical matter, necessary to the commission, of the other crime? Did it have some independent purpose? Did the asportation subject the victim to any additional significant danger?

We also pointed out that kidnapping is a continuing offense and does not end simply because the victim has been moved some distance. We noted that, after the victim was stabbed, "he was dragged into the car and, while still alive, driven to Pennsylvania. That conduct suffices at least as a continuation of the kidnapping." *Id.* at 114; 721 A.2d at 215. We likened the facts of *Stouffer* to *State v. Gomez*, 225 Conn. 347, 622 A.2d 1014, 1016 (1993), and we emphasized that, "[a]s was the case in *Gomez*, the victim in this case was never released, the kidnapping ended only with his death." *Stouffer*, 352 Md. at 114, 721 A.2d at 215–16 (citation and internal quotation marks omitted).

---

form one transaction, and cannot be fully shown or explained without proving the others." *Id.* at 712, 415 A.2d at 839. Applying that exception to the other crimes prohibition, we held that the crimes charged in each of the three indictments were part of the same criminal episode, and therefore could be joined for trial. *Id.* at 712, 415 A.2d at 839.

We would have reached the same result in *Tichnell* by application of the analysis we expressly adopt today. All of the crimes charged in the three indictments that were at issue in that case were part of the same criminal transaction and, for the same reasons we gave in *Tichnell*, were intrinsic to one another and therefore not "other crimes," as that phrase is employed in Maryland Rule 5–404(b).

The "how far," "where" and "why" of the kidnappings—all necessary to establishing Petitioner's role in those crimes— was explained by evidence of the murders of Mr. Patten and Ms. Brown that followed the initial accosting of them in the church parking lot, at the scene of which Petitioner was present; Petitioner's sharing of the proceeds of the robberies; and his taking the wheel of the victims' carjacked Acura following the murders and driving his associates into Washington, D.C., where they bought marijuana with the money taken from Mr. Patten and withdrew money from an ATM machine using the ATM card that was taken from Ms. Brown. That same evidence also corroborated the details of the testimony of Aaron Hollingsworth, which was crucial to the State's theory that Petitioner was an active participant in the entire criminal transaction, not, as he had argued, merely an unwilling bystander. *See Williams v. State*, 364 Md. 160, 179, 771 A.2d 1082, 1093 (2001) ("The longstanding law in Maryland is that a conviction may not rest on the uncorroborated testimony of an accomplice.").

In sum, the robbery, carjacking, murders, and subsequent use of the proceeds of the crimes were all intrinsic to the kidnappings. Those crimes were so connected or blended in point of time or circumstances with the kidnappings that they formed one transaction; moreover, the kidnappings could not be fully shown or explained without evidence of the other crimes. Therefore, admissibility of evidence of those crimes was not governed by Rule 5–404(b).

■ We turn, then, to Petitioner's arguments concerning the relevance and ultimate admissibility of the evidence of his involvement in the murder and other criminal activity at the retrial of the kidnapping charges. For the same reasons why the other crimes were intrinsic to the kidnappings, evidence of those other crimes tended to establish Petitioner's complicity in the kidnappings and, therefore, was relevant to proof of the kidnappings. *See* Md. Rule 5–401. The trial court was correct in so ruling.

We have said that relevant evidence is admissible, under Maryland Rule 5–402, subject to the court's exercise of discretion to exclude it, under Maryland Rule 5–403, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Petitioner argues that the court abused its discretion by admitting the evidence because it unfairly prejudiced his right to a fair trial.

As we consider that argument, we keep in mind that "the fact that evidence prejudices one party or the other, in the sense that it hurts his or her case, is not the undesirable prejudice referred to in Rule 5–403." McLain, *supra*, § 403:1(b) (2d ed. 2001); *accord* Joseph F. Murphy Jr., Maryland Criminal Evidence Handbook § 506(B) (3d ed. 1993 & Supp. 2007). Evidence may be unfairly prejudicial "if it might influence the jury to disregard the evidence or lack of evidence regarding the particular crime with which he is being charged." McLain, *supra*, § 403:1(b). The more probative the evidence is of the crime charged, the less likely it is that the evidence will be unfairly prejudicial.

It has been said that "[p]robative value is outweighed by the danger of '*unfair*' prejudice when the evidence produces such an emotional response that logic cannot overcome prejudice or sympathy needlessly injected into the case." Murphy, *supra*, § 506(B) (emphasis in original). The evidence that Petitioner sought to exclude was highly probative of his complicity in the charged kidnappings, for the reasons we have stated. Although the evidence surely prejudiced Petitioner, we are not persuaded that it *unfairly* prejudiced him, much less that the prejudice "substantially outweighed" the probative value of the evidence. *See* Md. Rule 5–403.

We therefore hold that the trial court neither erred not abused its discretion in allowing the State to present evidence of the other crimes that occurred during the criminal episode that included the kidnapping of Mr. Patten and Ms. Brown.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**