# CHARLES EDWARD BURNETT *v.* STATE OF MARYLAND

[No. 214, September Term, 1970.]

*Decided April 1, 1971.*

The cause was argued before ORTH, MORTON, and POWERS, JJ.

*David B. Allen,* with whom were *David B. Mitchell* and *Leonard S. Freedman* on the brief, for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *Sandra A. O'Connor, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

In a bench trial conducted in the Criminal Court of Baltimore, appellant was convicted of the separate crimes of rape and robbery for which he was later given consecutive sentences of life imprisonment and ten years imprisonment.

In the course of the trial below the victim testified that shortly after she crossed the Chesapeake Bay bridge, while enroute from the eastern shore of Maryland, she noticed that a car occupied by two men began following her and continued to do so until she arrived at her apartment house in the Brooklyn area of Baltimore City at approximately 10 o'clock in the evening. As she got out of her car, she was attacked by two men who dragged her to an open field. One of the men proceeded to rape her, the other attempted a perverted sex act and money was taken from her purse. She described the car which had followed her and had parked just ahead of her as she reached home as a "1958 Chevrolet with a light top." She testified that one of her assailants wore a gold, paisley shirt and the other had on dark clothing. In the course of her efforts to fend them off, she was able to bite the finger of one of the men—"I know I bit as hard as I could"—and she "took off" a ring worn by the other man. The ring was later turned over to the police and introduced into evidence.

Several hours after the attack, the appellant was arrested while being treated at the Mercy Hospital. The arresting officer testified, over objection, that a nurse told him that appellant "had been in to receive treatment for a human hand bite." The trial judge thereupon sustained the objection and ordered that the answer be stricken. The same officer was shown a photograph of an automobile which had earlier been identified by the victim as "looking like" the car that had followed her. He testified that the car in the picture was the same car he had seen parked in front of the Mercy Hospital at the time he arrested appellant. The officer stated that he had personally ascertained the ownership of the car but when he was asked to give the name of the owner, the objection by defense counsel was sustained.

At the conclusion of the trial, the presiding judge announced his verdicts of guilty and, in the course of explaining how he reached the verdicts, made the following statement:

> "It is hard for me * * * to totally exclude from my consideration the fact that there is evidence which the State could have produced and has not produced because of technical rules of evidence.
>
> I am afraid I must infer that the injury to the finger was a human bite because I know that's in the record which has been excluded, and I don't attach any significance to the attempts to get the registration of the automobile in because I don't know whether it's registered to the other defendant, but we are dealing with items of evidence.
>
> The only part of the evidence available which I can't put out of my mind which is not technically in evidence before me is the character of the injury to the finger. I must say that I am operating on the assumption that that is a hu-

man hand bite or finger bite, and that is not technically in evidence before me. I am not paying attention to the registration of the automobile, but the evidence is available to show that I'm wrong or cast out on that if need be to sustain the verdict. I would have the witnesses from the hospital subpoenaed to get a medical opinion as to the character of the injury to the finger. The circumstantial evidence unexplained leaves no doubt in my mind."

On April 7, 1970, some four days after the trial and the entry of the guilty verdicts but before the imposition of sentences, the trial judge addressed the following memorandum to the prosecuting attorney:

"In pursuance of my comments following the rendering of the verdicts in the above case, I would appreciate it if you would make the necessary arrangements for admission into evidence of the pertinent history and diagnosis of the Mercy Hospital and of the registration of the automobile referred to in the testimony in the above case at the time of disposition."

Counsel for the defense filed a written objection to the proposed procedure and renewed his objection when the case was called for sentencing on May 28, 1970. At the sentencing hearing the State was permitted to call Dr. Fu of the Mercy Hospital who testified that he treated appellant for two lacerations of his left index finger and that appellant "gave me the history that that finger was bitten by his wife." The doctor further stated that the wound was "compatible with a human bite." The State was also permitted at that time to call a representative of the Department of Motor Vehicles who testified that "Tag No., CF 7881" (which apparently was affixed to the car seen at Mercy Hospital by the police) had been issued to a vehicle owned by appellant.

In this appeal it is contended that the action of the

trial judge in permitting the State to introduce the additional evidence was prejudicial to the appellant and constituted a denial of his right to a fair and impartial trial. We agree.

It is true that a presiding judge in a criminal case, prior to verdict, may permit either the State or the defense, after closing its case, to reopen it for the purpose of offering additional evidence where "the ends of justice might be subserved" and where "there is no showing that his action was arbitrary nor that his discretion was abused." *Boone v. State,* 2 Md. App. 80, 98-100. But the reception of evidence after a verdict of guilty has been rendered presents an issue of entirely different dimensions. Here, the trial judge, forthrightly, asserted that in reaching the verdicts, he was relying upon factual evidence pointing to appellant's guilt which he had earlier in the trial excluded from evidence. The judge conceded that he was viewing the case before him in a factual posture which was not supported by the factual content of the trial proceedings.

The Fourteenth Amendment of the Federal Constitution compels the States to afford an accused in a criminal proceeding "due process of law." The sphere of this Amendment mandates that every individual accused of a crime shall receive no less than a fair and impartial trial. Realistically, it may not and necessarily need not be a perfect trial. *Shotkosky v. State,* 8 Md. App. 492, 505. It is the touchstone of the Amendment, however, that the trial be fair, impartial and conducted in accordance with the established rules of evidence. A cardinal element of fairness and impartiality in this perspective demands that the accused's conviction rest upon evidence legally before the trier of fact at the time the verdict is announced and that that evidence be legally sufficient to sustain the conviction. On the record before us, it is apparent that these precepts were not adhered to in the trial below and the failure to do so, in our opinion, resulted in a denial to the appellant of his constitutional

right to a fair and impartial trial. See *Commonwealth v. Bird,* 33 A. 2d 531, 534 (Pa. 1943).

> *Judgments reversed; case remanded for a new trial. Costs to be paid by the Mayor and City Council of Baltimore.*