# HERMAN GREEN v. STATE OF MARYLAND

[No. 256, September Term, 1974.]

*Decided December 17, 1974.*

The cause was argued before Orth, C. J., and Gilbert and Lowe, JJ.

*John W. Sause, Jr., District Public Defender,* for appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Sidney S. Campen, Interim State's Attorney for Talbot County,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 19 November 1973 in the Circuit Court for Talbot County HERMAN GREEN was found guilty by a jury of forging a check in violation of Code, Art. 27, § 44.[1] On 6 February 1974, upon receipt of a pre-sentence investigation report, a sentence of 8 years was imposed. Green appealed. We affirm.

Three questions are presented for decision:

I. Did the method of selection of the petit jury violate appellant's rights?

II. Was there a fatal variance between the *allegata* and the *probata?*

III. Was the trial, as a whole, fundamentally fair?

I

Green was presented and indicted on 24 September 1973. The docket entry of 28 September shows that Nanie Green was "surety recognized in the amount of $2,000.00 for his appearance when notified." Green was arraigned on 3 October. The docket entries under that date read:

---

1. The indictment filed against Green consisted of three counts. The first count charged that Green falsely forged a certain check, the second count charged that he caused and procured the check to be forged, and the third count charged that he uttered the check, all in violation of Code, Art. 27, § 44. At the close of evidence offered by the State, the State's Attorney moved to "dismiss" the third count. At a bench conference in the presence of Green it appeared that the defense sought a judgment of acquittal on both the second and third counts. After discussion the court said, ". . . I shall grant the motion of acquittal on the second and third counts, and submit only the question of direct forgery to the jury."

> "Traverser arraigned: Rule Plea.
> Plea 'Not Guilty' and prays a Jury trial.
> Trial set for Nov. 19, 1973.
> (Select Jury in Clerks Office).
> Bail to continue."

The transcript contains a statement concerning the arraignment:

> "On Wednesday, October 3, 1974, at 1:30 o'clock, P.M., in the Circuit Court for Talbot County, at Easton, Maryland, before the Honorable Harry E. Clark, Judge, and with Sidney S. Campen, Jr., Esq., the State's Attorney for Talbot County being present, Herman Green, the defendant, was brought into Court and was arraigned by the Clerk reading the indictment and asking the defendant as to his plea, and the defendant pleaded 'Not Guilty', and prayed a Jury trial. The date of November 19, 1974, was selected for the trial of said case, and the defendant was returned to the jail."

There is no mention of the selection of a jury. The indictment came on for trial on 19 November. The docket entries under that date read: "Trial before Judge James A. Wise, Ernest J. Gretzinger, Reporter. Jury impanelled and sworn, *viz:* . . . ." There follows the name of each of the twelve jurors. The transcript of the trial contains the following notation:

> " (The jury panel had previously been called over by the Clerk of the Court and all were present. Counsel, by stipulation, had selected the jurors they desired to try the case, and the said selected panel of jurors were called to their places in the Jury box.) "

The transcript continues:

> "The Court: Is the State ready, Mr. Campen?
>
> Mr. Campen [State's Attorney *ad interim* for Talbot County]: The State is prepared, your Honor.

The Court: Is the defense ready?

Mr. Stafford [Defense Counsel]: Yes, your Honor.

The Court: Mr. Green, is this panel as now seated in the jury box agreeable to you? Are you satisfied that they shall try this charge against you?

The defendant: Yes, sir.

(The traverser had been previously arraigned, pleaded not guilty and elected trial by jury) "

On the premise that he was not present when the twelve members of the jury who tried him were selected, Green claims reversible error. He argues that the selection of the jurors was a part of his trial, and that he had an absolute right to be present at all stages of the trial. Maryland Rule 775; *Brown v. State*, 272 Md. 450; *State v. Saul*, 258 Md. 100; *Midgett v. State*, 216 Md. 26; *Saul v. State*, 6 Md. App. 540. *See Smith and Nelson v. State*, 12 Md. App. 130.

Whether the jury was, in fact, selected in the Clerk's office at some time prior to 19 November, and, if it was, how it was selected, and whether a judge and Green were present, cannot be ascertained from the record before us. In our consideration of an appeal, we must, of course, stay within the record. The record here is not adequate for a determination of the issue presented. Nor can we say, on the state of the record, that if Green was not present when the jury was selected, that he waived his presence. In the light of the little we know about what actually occurred, we would be loath to hold, in the circumstances existent, that Green waived a right he may have had to be present when the jury was selected merely by answering in the affirmative the court's question whether he was satisfied to have the jury he found in the box try the charge against him. All things considered, we believe that the resolution of the contention as it reaches us here is best left to post conviction procedures, under which there may be a plenary hearing to ascertain exactly what occurred. We observe, however, that we have serious doubt of the propriety of selecting a jury in the Clerk's office out of the presence of a defendant.

## II

In arguing that there was a fatal variance between the allegations in the first count of the indictment and the proof adduced at trial, Green states the issue simply: "[M]ay a person charged with forgery of a check be convicted on evidence showing at most forging of an endorsement to a check? " The State concedes that Green ". . . is absolutely correct in his statement that he was charged with forging 'a certain check or bill of exchange.' " It admits that "[h]e is also correct in his evaluation of the evidence wherein it was conclusively proven that he had prepared the signature of Robert Thomas on the back of the check but had no part in the preparation of the handwriting on the face of the check." It agrees that Green's statement of the question ". . . precisely focuses the issue . . . ."

In the closing argument of the State's Attorney he told the jury:

> "Lastly counsel would have you believe that even though there was no endorsement or no proof that the defendant forged the face of this check, even though they made him put his name on the back, he had nothing to do with the face of it. I submit to you ladies and gentlemen of the jury that that is not necessary. The law is clear that any person who shall offer, make, forge or counterfeit, or cause or procure to be falsely made, forged or counterfeited, or willingly aid or assist in falsely making, forging, altering or counterfeiting any deed, document or affidavit or waiver of release or mechanic's lien, promissory note for the payment of money or property, and then the next word is important, endorsement or assignment."

Green now claims that an endorsement is not part of the instrument upon which it is placed and an allegation that the instrument was forged is not sufficient to charge forgery of the endorsement. He points to Code, Art. 95B, §§ 3-202, 3-413, 3-414, 3-417. The State acknowledges in its brief that authority is divided on the issue. It found no answer "in any

single opinion of Maryland's highest courts or in any local legislative source." Recognizing that "From a commercial perspective, the primary signature and the endorsement are treated as two separate and distinct contracts and are, therefore, regarded as different 'instruments' ", it urges us "to regard the check or 'bill of exchange' as a 'single instrument' for the purposes of applying the Forgery Statute and to leave the Commercial Law in its proper realm where the 'separate contract' theory may be used to dispose of civil disputes in a purely commercial setting." We do not decide the issue because it is not properly before us.

There is no question but that the first count of the indictment was sufficient on its face to charge that Green forged the check designated. So the indictment itself is not subject to attack. But the general rule is that matters essential to the charge must be proved as alleged in the indictment. *Love and Matthews v. State*, 6 Md. App. 639, 642. We put it thus in *Benjamin v. State*, 9 Md. App. 373, 375: "It is, of course, well settled that the evidence in a criminal case must not vary from those allegations in the indictment which are essential and material to the offense charged." When there is a material variance between the *allegata* and the *probata*, the judgment must be reversed. *Melia and Shelhorse v. State*, 5 Md. App. 354, 363. To preserve the point on appeal, however, it must be seasonably raised below. *Jackson v. State*, 10 Md. App. 337, 349. It may be so raised by a timely motion for judgment of acquittal. *Butina v. State*, 4 Md. App. 312, 319. The point then becomes a matter of the sufficiency of the evidence.

At the close of evidence offered by the State, Green sought and was granted a judgment of acquittal as to the second and third counts of the indictment. See note 1, *supra*. Green then testified in his own behalf. The defense rested and the State had no rebuttal. At that point in the trial, after inquiry by the court regarding instructions to the jury, counsel made their closing arguments. The jury retired at 2:05 P.M., returned at 2:20 P.M. and rendered a verdict of guilty.

It is firmly established that this Court may entertain the

issue of the sufficiency of the evidence in a case tried before a jury *only* upon the denial by the lower court of a motion for judgment of acquittal made at the close of all the evidence. *Williams v. State*, 5 Md. App. 450, 456. Green never moved for judgment of acquittal as to the first count of the indictment. Even if the motion for judgment of acquittal made at the close of evidence offered by the State be deemed to include the first count, that motion was withdrawn by Green when he offered evidence. He did not renew the motion at the close of all the evidence.[2] Therefore, the matter of the sufficiency of the evidence is not subject to our review on this appeal.

The question of variance between the *allegata* and the *probata* was not otherwise raised below. The short of it is that the court was not called upon to rule on the point and it simply was not tried and decided at the trial. Rule 1085. We note that defense counsel could have argued contrary to the State's view had he desired. But he put the matter of Green's guilt *vel non* to the jury thus: " [S]o the question before you and you have to decide is that, if you find he did endorse the name of Robert Thomas on the back of that check, is whether he .did it with the intent to defraud somebody of $76.92. I think the evidence is very weak in this case. I think it is entirely up to you people to decide first if he did endorse the name of Robert Thomas on the back of that check, and if he did, if he did it with the intent of defrauding somebody out of some money."

The variance issue not being properly before us; we do not reach it.

### III

Green asserts: "Albeit inadvertently, the trial was fundamentally unfair to appellant; and he was denied due process of law." [3] He presents two bases for the assertion: (1)

---

**2.** The motion may be made at the close of evidence offered by the State. If it is not then granted, ". . . the accused may offer evidence without having reserved the right to do so, but by so doing, he withdraws his motion." Maryland Rule 755 b. See Code, Art. 27, § 593.

**3.** Both the Constitution of the United States, Amendment VI, and the Declaration of Rights of the Constitution of Maryland, Art. 21, speak in terms of a speedy trial by an impartial jury. But Art. 23 of the Declaration

"Lack of definition of issue to jury," and (2) "Statement of State's Attorney."

(1)

Green sums up his argument with respect to the first basis:

> "In point of absolute, objective fact, the jury was never accurately told what charges had been made against Appellant; was never advised of which charges he had been acquitted by the Court; and with what conduct he must be connected in order to find him guilty. Obviously, the jury felt that Appellant had committed some misconduct; but the record fails to disclose that they had any basis whatsoever for equating the facts which they heard to any conduct proscribed by law."

He centers on the absence of instructions to the jury by the court and couples that with the lack of arraignment before the jury, reference by the court to "this charge", reference by the prosecution in opening argument to "forgery and uttering", failure of the trial judge to tell the jury that there had been a judicial acquittal of the second and third counts, the statement of defense counsel in argument that there was no evidence of uttering, when at the time that charge, in fact, was not before them, the assertion of the prosecutor in his closing argument that "forgery of the check as alleged in the indictment was equivalent to forgery of an endorsement as referred to in the statute." [4]

We believe that the jury were sufficiently aware of what they were called upon to determine, that is, whether Green had forged a certain check. We first note that the absence of

---

of Rights declares "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Amendment XIV to the federal constitution forbids any State to deprive any person of life, liberty, or property, without due process of law. "Law of the land" has been construed to be synonymous with "due process of law." *In re Easton,* 214 Md. 176.

4. See discussion under II *supra.*

instructions to the jury was largely the doing of defense counsel.[5] When the defense rested its case and the State indicated it had no rebuttal evidence, defense counsel began his closing argument. The transcript reads:

"The Court: Wait just a minute.

Mr. Stafford: I thought he waived his opening statement.

The Court: They haven't been instructed. If anybody is urging —

Mr. Stafford: I didn't want any.

The Court: Mr. Campen, do you want the jury instructed at all?

Mr. Campen: No, your Honor. We will allow the Court to instruct the jury if the Court wishes to.

The Court: It is the privilege of counsel to ask for instructions. I don't in this case insist on it.[6]

Mr. Campen: I have no requests for instructions.

Mr. Stafford: Nor do I. You are also waiving opening argument, Mr. Campen?

Mr. Campen: I will defer to Mr. Stafford."

Defense counsel resumed his argument.

It is apparent that the desire of the defense not to have the jury charged by the court was a carefully considered trial tactic. In any event, the closing arguments of counsel adequately apprised the jury of the crime they were to consider. Defense counsel said: " [Y]ou have just one question, as I see it, to decide today, and that is this, whether or not, on the 27th day of June 1973, in Talbot County, with intent then and there to defraud, that he [Green] feloniously did make, forge and counterfeit a certain

---

5. The attorney representing Green on appeal is not the attorney who represented him below.
6. Rule 756 b provides that "The court may and at the request of any party, shall give such advisory instructions to the jury as may correctly state the applicable law; . . . ."

check." He then reviewed the evidence on that charge. The State's Attorney said: " [Y]ou recall at the outset of this case that I indicated to you I was going to produce several witnesses, five in fact, in order to show you that, in fact, Herman Green forged a certain draft drawn on the New Brick and Tile Company." He then reviewed the evidence so adduced.

We do not believe, in the circumstances, that any of the matters Green now couples with the lack of jury instructions operated to prevent the jury from understanding what they were to determine. We conclude that the trial was not fundamentally unfair and that Green was not denied due process of law by "a lack of definition of issue" to the jury.

(2)

The State's Attorney concluded his argument in these words:

> "I am sure, ladies and gentlemen of the jury, that the endorsement in this case is, in fact, a forged endorsement by the defendant in the case, and I ask for a verdict of guilty."

Green made no objection below. He now points to Ethical Consideration 7-24 under Canon 7 of the Code of Professional Responsibility adopted by Rule 1230. Canon 7 declares: "A Lawyer Should Represent a Client Zealously Within the Bounds of the Law." E C 7-24 explains:

> "In order to bring about just and informed decisions, evidentiary and procedural rules have been established by tribunals to permit the inclusion of relevant evidence and argument and the exclusion of all other considerations. The expression by a lawyer of his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused is not a proper subject for argument to the trier of fact. It is improper as to factual matters because admissible evidence possessed by a lawyer should be presented

only as sworn testimony. It is improper as to all other matters because, were the rule otherwise, the silence of a lawyer on a given occasion could be construed unfavorably to his client. However, a lawyer may argue, on his analysis of the evidence, for any position or conclusion with respect to any of the foregoing matters."

We do not think the comment was misleading or so prejudicial to Green as to warrant reversal. Had the prosecutor couched the conclusion in terms of the evidence rather than his personal feelings it would have been perfectly proper. *See Witcher v. State*, 17 Md. App. 426; *Ott v. State*, 11 Md. App. 259; *Holbrook v. State*, 6 Md. App. 265.

We conclude that the trial was neither fundamentally unfair nor was Green denied due process of law by the statement of the prosecutor. We observe again: " ' [A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Brown v. United States*, 411 U. S. 223, 231-232; *Burnett v. State*, 11 Md. App. 550, 554; *Shotkosky v. State*, 8 Md. App. 492, 505.

## IV

*Supplemental Issues*

In appellant's brief are ten contentions set out at his direction. The 7th, with reference to the selection of the jury, is covered by our discussion of question I. The 6th and 10th concern the sufficiency of the evidence, which we have held under question II to be not properly before us. The 2nd and 9th, involving jury instructions, are disposed of under question III. The 1st — "Did trial judge err by not letting the jury see the check? " — and the 5th — "Did the State err by not having Robert Thomas in court? " — are based on a misapprehension of fact. The check was submitted to inspection by the jury. The State never asserted the existence of "Robert Thomas" and appellant knew no one of that name. The 4th claims error by the imposition of a sentence of 8 years. The sentence was within the maximum authorized by Code, Art. 27, § 44 and there is no indication it was imposed by any unworthy motive. *Bieber v. State*, 8 Md.

App. 522, 548. The 8th asks if the court erred in accepting a "handwriting expert's report? " Corporal Gary Girton of the Maryland State Police was accepted by the court as an expert in the analysis of questioned documents, including handwriting, after a thorough examination of his qualifications. The court did not abuse its discretion in so doing. The handwriting specimens received in evidence were properly admitted. *See Sutton v. State*, 4 Md. App. 70, 73; *Spillers v. State*, 10 Md. App. 643, 648. There was no evidence that the specimens were given involuntarily or otherwise illegally obtained. The 3rd and last to be considered asks if Green received adequate representation at the trial. He did not question his representation below and the matter is not now before us. *White v. State*, 17 Md. App. 58, 64.

We hold that the *pro se* contentions afford no basis for reversal of the judgment.

*Judgment affirmed.*