REPORTED

<u>IN THE COURT OF SPECIAL APPEALS</u>

<u>OF MARYLAND</u>

No. 987

September Term, 2016

DANIEL NICHOLAS SMITH

v.

STATE OF MARYLAND

Eyler, Deborah S.,
Wright,
Zarnoch, Robert A.,
 (Senior Judge, Specially Assigned),

JJ.

Opinion by Wright, J.

Filed:   April 28, 2017

*This is an unreported opinion, and it may not be cited in any paper, brief, motion, or other document filed in this Court or any other Maryland Court as either precedent within the rule of *stare decisis* or as persuasive authority.  Md. Rule 1-104.

This appeal arises out of the criminal charges, jury trial, and guilty verdict that resulted from events which took place on August 13, 2015.

Appellant, Daniel Smith, appeared before District Court Commissioner Marie Ann Caron in Washington County following Smith's arrest on a warrant. Caron imposed money bail as a condition of Smith's release. Smith became angry and shouted at Caron. As a result, Smith was charged with threatening a State or local official.

On June 27, 2016, a jury trial was held in the Circuit Court for Washington County. Smith was convicted by the jury and sentenced to three years' incarceration, all suspended, with nine months to be served in home detention, followed by a period of probation.

Smith timely appealed, asking:

I. Did the trial court commit plain error in failing to require the jury to find that the Appellant intended to threaten the complainant?

II. Did the trial court err in finding sufficient evidence to convict the Appellant for threatening a State or local official in the manner charged in the State's indictment?

III. Did the trial court err in admitting testimony that the Appellant spat in the direction of the complainant?

**FACTS**

On August 13, 2015, Caron met with Smith following his arrest (the "Initial Appearance"). Caron testified that after she set money bail, Smith became furious. Caron testified that Smith "exploded and started cursing, yelling profanities. He said, 'Fuck you bitch.'" Caron testified that Smith also shouted, "I'm going to find you," and "You better find another job." Caron further testified that Smith put his finger up, made

1

eye contact with her, and said, "I'm going to find you" while thrusting his finger into the glass.

The guards then came to take him away. Deputy John Hinman of the Washington County Detention Center testified that, as Smith started to leave the room, "he turned back around and spit towards the Commissioner."

In a pretrial motion *in limine,* defense counsel moved to exclude any mention of why Smith had been arrested, citing Maryland Rule § 5-404(b), which generally prohibits admission of evidence of the defendant's prior bad acts, outside of the crime charged. The prosecutor and defense counsel agreed that there would be no mention of the arrest warrant or Smith's criminal history. Rather, they agreed to stipulate to the jury that Smith had been at the Initial Appearance to be given information about his rights, and that the case for which he was coming in was subsequently dismissed.

Defense counsel also moved to exclude any testimony that Smith spat in the direction of Caron at the conclusion of the meeting. The spitting occurred out of Caron's view. The circuit court denied the motion, finding that the testimony about the spitting was admissible to provide context to Smith's words. Defense counsel objected when Deputy Hinman testified that Smith spat in the direction of Caron.

Before the circuit court instructed the jury, defense counsel renewed a motion for judgment of acquittal. Defense counsel noted that the charging document in this case narrowed the charge by alleging that Smith threatened to create bodily injury to a State official, while omitting mention of other modes of threatening. That motion was denied.

Additional facts will be provided as they become relevant to our discussion, below.

## DISCUSSION

**I.     Intent to Threaten**

Smith avers that the circuit court committed plain error, which requires reversal, by failing to require the jury to find that Smith intended to threaten Caron.

Smith relies on *Elonis v. United States,* 135 S. Ct. 2001, 2012 (2015), where the Supreme Court held that 18 U.S.C § 875(c), the federal threats statute, did not apply to negligent conduct.  According to the Supreme Court, the pattern jury instruction requiring the government to prove only that a reasonable person would regard the communication as a threat was erroneous and, thus, it reversed the conviction.  *Id.*  Smith asserts that the jury instruction in *Elonis* is "substantially similar to the instruction propounded in the instance case" and, therefore, employs a negligence standard of intent.

The State responds by distinguishing the law under which Smith was convicted, Md. Code (2002, 2012 Repl. Vol.), § 3-708(b) of the Criminal Law Article ("CL"), which includes an intent element, from the federal threats statute, which did not include an intent element.  The State also avers that the jury instructions adequately addressed the intent requirement.

Smith recognizes that this issue was unpreserved for appeal because defense counsel did not object at the time of the jury instruction.  However, Smith asks that we exercise our discretion to recognize plain error under Maryland Rules 4-325(e) and 8-131.  "Plain error is 'error which vitally affects a defendant's right to a fair trial.'"

3

*Richmond v. State,* 330 Md. 223, 236 (1993) (quoting *State v. Daughton,* 321 Md. 206, 211 (1990)). It is error that is "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *Id.* (quoting *State v. Hutchinson,* 287 Md. 198, 203 (1980)).

The factors to be considered by an appellate court in deciding whether to review jury instructions for plain error include the opportunity to use the unpreserved issue to illuminate an area of the law, the egregiousness of the error, the likely impact of the alleged error on the defendant, and the degree of lawyerly diligence or dereliction. *See, Austin v. State,* 90 Md. App. 254, 268-72 (1992). In *Austin,* we stated:

> On rarer occasions, we might even be influenced by the opportunity that the notice of "plain error" might afford to illuminate a murky recess of the law. The interpreting and molding of the law is as weighty a consideration in appellate councils as is the correction of error in individual cases.

*Id.* at 271.

Smith asks that we exercise our discretion to review for plain error here. He argues that each of the factors weigh strongly in his favor, most notably that this is an issue of first impression since this is the first time the question has been raised since *Elonis*. He also asserts that it would afford this Court an opportunity to address the question of if a jury must be instructed to determine whether the defendant intended to threaten as an element of the crime. For these reasons, we accept Smith's invitation to review for plain error.

We conclude that intent to threaten is indeed an element of the crime which must be included in jury instructions, but hold that the jury was adequately instructed on this element in the present case.

In *Elonis,* the petitioner was charged under 18 U.S.C. § 8-75(c)[1], and the jury instructions were as follows:

> A statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual.

135 S. Ct. 2007 (internal citations omitted). The Court held that requiring the prosecution to prove only that a "reasonable person" would regard the communication as a threat meant that the conduct was determined by a negligence standard. *Id.* at 2011. The "reasonable person" standard "is inconsistent with the conventional requirement for criminal conduct – *awareness* of some wrongdoing." *Id.* (internal quotation marks and citations omitted). The Court held that the prosecution must prove the defendant's subjective intent to threaten. *Id.*

In the present case, Smith was charged under CL § 3-708(b) which imposes an intent requirement that 18 U.S.C. § 8-75(c) lacks. CL § 3-708(b) provides that, "A person may not knowingly and willfully make a threat to take the life of, kidnap, or cause

---

[1] 18 U.S.C. § 8-75(c) reads:

Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

physical injury to a State official, a local official, a Deputy State's Attorney, an Assistant

State's Attorney, or an Assistant Public Defender."

Smith correctly states in his brief that the jury instruction was as follows:

A statement is a threat if it was made under such circumstances that a
reasonable person hearing or reading the statement would understand it as a
serious expression of an intent to physically injure a State Official. In
deciding whether the Defendant made a threat you may consider among
other circumstances the language the Defendant used and whether a
reasonable person hearing or reading the words and knowing all of the
circumstances would have considered the words to be a threat.

Smith asks that we read this instruction, derived from the Maryland Criminal Pattern Jury

Instruction 4:12.2, as substantially similar to the instruction in *Elonis* and, therefore,

requiring reversal.

Smith fails to recognize that this is merely an excerpt of the jury instruction. On

appeal, "instructions are reviewed in their entirety to determine if reversal is required."

*Fleming v. State,* 373 Md. 426, 433 (2003).

Additional relevant jury instructions were as follows:

Intent is a state of mind and ordinarily cannot be proven directly
because there is no way of looking into a person's mind. Therefore, a
Defendant's intent may be shown by surrounding circumstances. In
determining the Defendant's intent you may consider the Defendant's acts
and statements as well as the surrounding circumstances. Further you may
but are not required to infer that a person ordinarily intends the nature and
probable consequences of his acts or omissions.

* * *

. . . knowingly, knowing is generally defined as having knowledge. Mr.
Smith acted knowingly if he realized what he was doing, was aware of the
nature of his conduct and did not act through mistake, accident,
carelessness or other innocent reason. The State has the burden of proving

6

knowledge beyond a reasonable doubt. Knowledge can be established from all the surrounding facts and circumstances. You may find Mr. Smith had knowledge if he acted with an unlawful purpose and deliberately ignored the obvious.

* * *

. . . willfully means an act that is done knowingly and with deliberate intention. An act that is done merely because of mistake, accident, carelessness or other innocent reason is not done willfully.

The Defendant is charged with threatening a State Official. In order to convict the Defendant the State must prove, one, that the Defendant communicated a threat to another. Two, that the threat was to physically injure a State Official and, three, that the Defendant made the threat knowingly and willfully.

* * *

A threat is knowingly or consciously made if the person writing or speaking comprehends the meaning of the words used.[2]

Putting aside the differences in the statutes, namely that CL § 3-708(b) includes an intent requirement where 18 U.S.C. § 8-75(c) did not, and assuming *arguendo,* that the statutes are substantially similar[3] and that *Elonis* is therefore controlling, Smith's argument that reversal is required still fails.

---

[2] This sentence was added as an additional instruction as requested by defense counsel.

[3] In *Abbott v. State,* we explained CL § 3-708 in a different context, and explained that the predecessor to the current statute "was patterned on a substantially similar provision, U.S.C. § 871(a), which prohibits threats to take the life of or inflict bodily harm upon the President of the United States." 190 Md. App. 595, 617 (2010) (citation and footnote omitted).

In *Elonis,* the defense counsel requested a jury instruction that "the government must prove that he intended to communicate a true threat." 135 S. Ct. at 2007 (citation omitted). The circuit court denied that request. *Id.* The Supreme Court stated that "[t]he jury was instructed that the Government need to prove *only* that a reasonable person would regard Elonis's communications as threats, and that was error.[4] Federal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state." *Id.* at 2012 (emphasis added). The Court also stated:

> [t]he presumption in favor of a scienter requirement should apply to *each* of the statutory elements that criminalize otherwise innocent conduct. . . . communicating *something* is not what makes the conduct "wrongful." Here the crucial element separating legal innocence from wrongful conduct is the threatening nature of the communication. The mental state requirement must therefore apply to the fact that the communication contains a threat.

*Id.* at 2011 (internal quotations and citations omitted).

Here, unlike in *Elonis,* the jury *was* instructed that the State must prove that Smith made a threat "knowingly and willfully" and further that willfully means "with deliberate intention" and where the speaker comprehends the words. The reasonable person standard was not used to eliminate the *mens rea* requirement that is fundamental to find criminal wrongdoing. To rule otherwise would require this Court to ignore the requirement to review instructions in their entirety. Therefore, the jury instruction given in this case adequately meets the *Elonis* holding that negligence is not sufficient to support a conviction under the relevant threats statue.

---

4 In *Elonis,* the government too, dispensed with the intent requirement, arguing in closing that it did not matter what Elonis thought at the time he made the threat. This was contrary to the argument made by the State in its closing.

## II.    Sufficiency of the Evidence

Next, Smith avers that there was insufficient evidence to convict him for threating a State official.

In reviewing the merits of a claim relating to the sufficiency of evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (citation omitted).  In assessing the sufficiency of the evidence presented at trial, the limited question before us is not "whether the evidence *should have* or *probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder." *Allen v. State,* 158 Md. App. 194, 249 (2004) (citation omitted), *aff'd,* 387 Md. 389 (2005).  The Court views not just the facts, but "all rational inferences that arise from the evidence," in the light most favorable to the prevailing party.  *Abbott,* 190 Md. App. at 616.  Appellate review should not involve undertaking "a review of the record that would amount to a retrial of the case."  *Winder v. State,* 362 Md. 275, 325 (2001) (citation omitted).

"[T]he general rule is that matters essential to the charge must be proved as alleged in the indictment." *Green v. State,* 23 Md. App. 680, 685 (1974) (citation omitted).  "[T]he evidence in a criminal trial must not vary from those allegations in the indictment which are essential and material to the offense charged." *Id.* (citation omitted).

Smith avers that "the State's evidence presented at trial deviated from the essential elements the State charged in its indictment."  The statute prohibits threats to "take the

9

life of, kidnap, or cause physical injury[.]" CL § 3-708(b).  Smith asserts that the State specified the distinct type of injury threatened, bodily harm, which therefore limited the scope or type of threat that the jury could convict him for, but that the State then failed to present any evidence that Smith threatened bodily injury.

Smith avers that here, the variance between the elements alleged and the evidence presented was fatal to the conviction and requires reversal.  To support this position, Smith looks to *McDuffy v. State,* 6 Md. App. 537, 538 (1969), where an indictment charged the defendant with forgery of an "American Oil Credit Card" but the evidence proved the forgery of a receipt for purchased merchandise.  We reversed the forgery conviction on the grounds of insufficient evidence, stating "an individual cannot be convicted of forging one instrument when the proof shows that he forged an entirely different instrument."  *Id.* at 539.  "When there is a material variance between the *allegata* and the *probata,* the judgment must be reversed."  *Green*, 23 Md. App. at 685 (citation omitted).  Smith asserts that the same is true here – that he "cannot be convicted for threatening to cause bodily injury to a State official when the State's evidence at trial does not show that there was a threat to cause bodily injury."

Smith misinterprets *McDuffy,* stating that the *allegata* was "bodily harm" but the *probata* were nonspecific words.  *McDuffy* would apply if the State had charged Smith with threatening bodily injury (the *allegata*), but at trial, it attained a conviction by proving that he threatened kidnapping (the *probata*).  That is not the case.

Rather, what Smith is asserting is that the State failed to present adequate evidence that the words Smith communicated to Caron threatened bodily injury.  Smith asserts that

10

even if the statement, "I'm going to find you," was indeed a threat to do "some harm," that "some harm" is not sufficient to constitute bodily harm beyond a reasonable doubt. Smith states that "egging the complainant's house, slashing her tires, or lobbying in front of her office building to get her fired" are all types of "some harm" that are not criminalized by the statute.

While Smith correctly identifies examples of harm that a jury could infer from the statement, he fails to recognize that his burden is to persuade that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when considering the statements and circumstances. *Jackson*, 443 U.S. at 319.

The State responds that the words and actions used by Smith suggested that he was going to harm Caron and the movements toward her, when viewed in context, sufficed for a jury to find a threat of bodily injury. *See State v. Rusk,* 289 Md. 230, 246 (1981) ("That threats of force need not be made in any particular manner in order to put a person in fear of bodily harm is well established. Indeed, conduct, rather than words, may convey the threat.") (Citations omitted).

Here, the State presented evidence that numerous components of Smith's behavior coalesced to show that Smith threatened Caron with bodily harm, including that Smith threatened to "find" her, he shouted obscenities at her, he made "violent motions" with his body, and that he leaned as close to the glass barrier as he could and pointed at her menacingly. The State further avers that Smith's action of spitting at Caron is particularly suggestive and notes that in a number of jurisdictions, spitting is sufficient to support a conviction for battery or assault because it shows intent to harm the target. *See,*

11

*e.g., Ray v. U.S.,* 575 A.2d 1196, 1199 (D.C. 1990); *Hobbs v. State,* 251 P.3d 177, 180 (Nev. 2011); *Gilbert v. Commonwealth,* 608 S.E.2d 509, 511 (Va. Ct. App. 2005).  The State concludes that these are all words and actions that Smith used to suggest that he was going to harm Caron.

Viewing all rational inferences that arise from the evidence in the light most favorable to the prevailing party, we affirm that a reasonable jury could have found that Smith threatened Caron with bodily harm.  *Abbott,* 190 Md. App. at 616.

## III.    Evidence that Smith Spat at Caron

Finally, Smith avers that the circuit court erred in admitting testimony that he spat in the direction of Caron.

Defense counsel moved *in limine* to exclude evidence that Smith spat at Caron, asserting that it occurred outside of the Initial Appearance.  Defense counsel contended that it should be excluded as irrelevant because it happened out of her sight and as unduly prejudicial because the jury could draw harmful inferences regarding Smith's character and criminal propensity.  The following exchange occurred regarding the admission of the spitting:

> THE COURT: Well, and to me that's an uncharged act.  I guess they - -
>
> DEFENSE COUNSEL: Right.  He's not charged with a Second Degree Assault here so I don't - -
>
> THE COURT: Having said that I don't know that it's inadmissible.  I mean, it's part of the, his, part of his conduct as to his person and how is it not admissible.
>
> DEFENSE COUNSEL: Well, I think it simply paints a picture that is not necessary to the charge of actually making a threat to a State official in this

12

case. It's outside of her presence. He's not charged with an assault. If he'd been charged with an assault in this case we'd be having a different discussion but he's not. He's simply charged with an oral threat with a State official. There's nothing in the language of Section 3709 that says a gesture or a motion can constitute a threat. It has to be an oral or written statement that's a threat. Spitting is not an oral or written statement so I think it is outside of what is relevant to the charge of threatening a State official.

THE STATE: Your Honor, often times when you have a statement that is not completely explicit like you do in this case you have to take the context. The context is important. If he were laughing and joking and said this we may not even be here. But the fact that he spit at the end of it after having several outbursts is part of the context of whether he meant it as a threat and whether the trier of fact can determine that it was a threat or not.

THE COURT: I do think that it's necessary information. For example, if instead of that if he, you know, were making a punching motion while it may not have been charged as an intent to frighten assault it certainly would be part of his demeanor and character during the time that these statements were made.

DEFENSE COUNSEL: And if it had happened during the Initial Appearance again I think it's something that we'd be having a difference discussion over but this happened outside the Initial Appearance. She doesn't even see it happen.

THE COURT: Right. But the statute - - The purpose of the statute is not to limit what the person sees or is exposed to. The purpose of the statute is to get to any, any threat made. I do think it's a part of the relevant context. I think it's probative as to what was meant by the statements that were made. And it's not unfairly prejudicial. It's not going to mislead the jury. It's not going to confuse the jury. It's simply part of the context of what was said or done.

Defense counsel objected during the trial when a State's witness testified about the spitting, properly preserving this question for review.

Maryland Rule 5-403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

13

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Whether evidence is relevant under Maryland Rule 5-403 is reviewed for abuse of discretion. *Brooks v. State,* 439 Md. 698, 708-09 (2014). "Abuse of discretion" has been said to occur "'where no reasonable person would take the view adopted by the [trial] court,' or when the court acts 'without reference to any guiding rules or principles.'" *Nash v. State,* 439 Md. 53, 67 (2014) (quoting *North v. North,* 102 Md. App. 1, 13 (1994)). A ruling reviewed for an abuse of discretion will not be reversed "simply because the appellate court would not have made the same ruling." *Norwood v. State,* 222 Md. App. 620, 643 (2015) (citation omitted). Rather, a trial court's "decision is an abuse of discretion when it is well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *Id.* (citation omitted).

Maryland Rule 5-404(b) prohibits admission of a defendant's "bad acts" at trial, subject to certain exceptions, reading in full:

> Evidence of other crimes, wrongs, or acts including delinquent acts as defined by [Md.] Code [1973, 2013 Repl. Vol.], Courts [& Judicial Proceedings] Article, § 3-8A-01 is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

Maryland Rule 5-404(b) prohibits other bad acts evidence to protect against the risk that a jury will assume that because a defendant committed other crimes, he is more likely to have committed the crime for which he is on trial. *Smith v. State,* 218 Md. App. 689, 709-10 (2014). The prohibition "reflects a fear that jurors will conclude from

14

evidence of other bad acts that the defendant is a 'bad person' and should therefore be convicted, or deserves punishment for other bad conduct and so may be convicted even though the evidence is lacking." *Behrel v. State,* 151 Md. App. 64, 124 (2003) (citations omitted).

The Court of Appeals has established a three-part test for admission of other bad acts. *Jackson v. State,* 230 Md. App. 450, 458 (2016). The first step is to determine whether the evidence fits into one or more of the special relevancy exceptions, which include motive, intent, absence of mistake, a common scheme or plan, identity, opportunity, preparation, or knowledge. *State v. Faulkner,* 314 Md. 630, 634 (1989). The second step is to determine whether the accused's involvement in the other crimes is established by clear and convincing evidence. *Id.* Finally, the court must carefully weigh the necessity for and the probative value of the "other crimes" evidence against any undue prejudice likely to result from admission. *Id.* at 635.

Smith asserts that the circuit court engaged in only a "cursory analysis" of the evidence and failed to conduct the second prong of the three-part test. However, Smith fails to recognize that if an act is part of the alleged offense, the act does not constitute an "other" act to which the rule applies. *See Dixon v. State,* 133 Md. App. 325, 330 (2000), *rev'd on other grounds,* 364 Md. 209 (2001). In *Odum v. State,* 412 Md. 593 (2010), the Court of Appeals found no abuse of discretion in the trial court's admittance of evidence of the defendant's "other" conduct in a kidnapping prosecution. The Court held that the trial court properly allowed the jury to consider evidence of the robberies, carjacking, and murders that surrounded the kidnapping for which the defendant on trial, because these

15

acts took place "during the criminal episode." *Id.* at 615. Thus, the prohibition against "other crimes" evidence does not apply to evidence of wrongs "that arise during the same transaction and are intrinsic to the charged crime[.]" *Id.* at 611. The *Odum* Court defined "intrinsic" in this context to mean, at a minimum:

> other crimes that are so connected or blended in point of time or circumstances with the crime or crimes charged that they form a single transaction, and the crime or crimes charged cannot be fully shown or explained without evidence of the other crimes.

*Id.*

Therefore, before turning to the merits of Smith's assertion that the circuit court did not property apply the three-prong test, we must first determine whether the spitting occurred during "the criminal episode," and we hold that it did. Here, Smith's spitting at Caron was sufficiently connected with the orally communicated threats to form a "single transaction" as identified by the *Odum* Court. The entire interview lasted only approximately half an hour. No events intervened between the communications to Caron and the spitting. The oral communications and the spitting all occurred in the same geographic location. For these reasons, we agree that the spitting was sufficiently connected to the single episode so as to be offered for context to the act, not as an "other" act under Md. Rule 5-404(b).

Moreover, the purpose of the rule would not be served by excluding this testimony. The purpose of the rule is to keep a jury from assuming the commission of one crime based on the commission of another crime or act. Here, Smith's conduct is undisputed. Rather, it was the significance of the conduct that mattered. Therefore, the

16

spitting did not unfairly suggest that Smith committed the act, but rather, appropriately provided context for the act.

Accordingly, the circuit court did not abuse its discretion in admitting the testimony, and we need not turn to the merits of the argument regarding the application of the *Faulkner* three-prong test.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED.**
**COSTS TO BE PAID BY APPELLANT.**